Macdonald, D. Lloyd, J.
Before the Court is the defendant’s motion to suppress drugs and evidence seized from the defendant’s vehicle and from his person following his arrest. For the reasons stated below, the motion is DENIED.
Findings of Fact
The Court heard testimony from three police officers. The Court found each of them credible.
Detective Sergeant Robert Aguiar (“Aguiar”) of the New Bedford Police narcotics unit was on routine patrol in the early evening of August 4, 2008 and drove his unmarked vehicle into the parking lot of CVS adjacent to the junction of Route 6 and Route 140 in the City. Aguiar had been on the force for 21 years and assigned to narcotics for 14 years. During that time he had come to know that the subject CVS lot was frequently used as a place for drug dealers and customers to meet. It was conveniently located at the intersection of two highways and was only about a mile from Interstate 195, which connects the Cape to New Bedford, Providence and points south and west.
Aguiar noticed a red Mitsubishi Gallant (the “Gallant”) parked with two people inside. What drew his attention were the actions of the male passenger to look quickly around at Aguiar and thereafter repeatedly to ’’spin" around whenever other vehicles entered the lot to look at the drivers. Aguiar concluded the passenger was expecting to meet somebody, and Aguiar suspected that it might be for the purpose of a drug transaction. Aguiar radioed for a license check, and the Gallant came back registered to a Mashpee address. The address was significant because in Aguiar’s experience drug users and dealers from the Cape frequently come to New Bedford to purchase narcotics because of the higher purity and lower price of the product in the City than on the Cape.
After about five minutes, Aguiar observed an Oldsmobile enter the lot and approach the Gallant. The passenger from the Gallant got out and entered the passenger side of the Oldsmobile. The Oldsmobile then left the lot, with the Gallant following. Aguiar suspected that a retail drug transaction was about to go down (customers typically wait for the dealers; frequently the customer will then join the dealer for a short ride during which the sale is made away from the meet site, after which the customer exits). Accordingly, Aguiar followed the two vehicles and radioed for stand-by assistance.
After several turns on the city streets, both vehicles stopped without parking. The passenger got out of the Oldsmobile and then got back into the Gallant. Via radio, Aguiar instructed other officers to follow each car. He then directed the officers tracking the Gallant to stop the vehicle and make a threshold inquiry.
Upon the officers doing so, the female driver of the Gallant excitedly informed the officer on her side of the vehicle that the passenger had thrown a plastic bag in her direction after she had stopped. The officers then recovered a plastic bag with what appeared to be cocaine from the area of the car indicated by the driver.
With the information in hand as to the Gallant cocaine, Aguiar instructed officers following the Oldsmobile to stop the vehicle and arrest the driver. The officers did so. The defendant was the driver. A substantial amount of cash was found on the defendant.
Aguiar then directed that the Oldsmobile be driven to a nearby City of New Bedford yard and searched for narcotics, money and related paraphernalia. In the course of the search, two “hides” built in under the *359 front seat of the Oldsmobile were found. Inside one of them was a large quantity of cocaine.
Rulings of Law
The Stop of the Gallant and the Seizure of the Cocaine from the Gallant[1]
Aguiar’s observations interpreted through the prism of his lengthy experience as a narcotics detective provided reasonable suspicion that a drug transaction had occurred sufficient to justify the stop. Commonwealth v. Silva, 366 Mass. 402, 406 (1974). “Seemingly innocent activities, taken together can give rise to reasonable suspicion justifying a threshold inquiry.” Commonwealth v. Grandison, 433 Mass. 135, 139 (2001) (citation omitted).
Aguiar was not operating on a “mere hunch.” Commonwealth v. Clark, 65 Mass.App.Ct. 39, 44 (2005). The “specific, articulable facts and reasonable inferences drawn therefrom,” Commonwealth v. Mercado, 422 Mass. 367, 369 (1996) (citation omitted), relied upon by Aguiar were the following: The Gallant had been parked in an area known to be a meeting place for dealers and customers. The Gallant was registered on the Cape, and Cape users and dealers frequently purchased their drugs in New Bedford. The CVS was located near a common route of access from the Cape. The passenger was acting in an overtly suspicious manner as he was seen to “spin” to look at eveiy entering car to the lot, consistent with Sgt. Aguiar’s experience in observing narcotics customers awaiting their connections. Typically, customers arrive first; the dealer follows. When the person whom the passenger was awaiting arrived, the passenger left the Gallant and rode off for a short period of time with the driver of the Oldsmobile, again consistent with Sgt. Aguiar’s experience as to how a routine retail drug transaction occurs. Then, after a time sufficient for a sale to be made, the Oldsmobile stopped, and the passenger alighted and returned to the Gallant. The pick-up, the travel away from the meeting place, the opportunity for privacy/for substantial freedom from being viewed by others during the ensuing travel, and the drop-off of the customer at a safe distance from the meet site — all were consistent with an illicit narcotics transaction in the Sergeant’s experience. Taken together, the circumstances gave Aguiar objectively reasonable grounds to instruct that the Gallant be stopped.
Once the stop had been effected, the police were directed to the narcotics by the spontaneous and voluntary acts of the driver. Whatever “search” occurred was reasonable. See generally Commonwealth v. Garden, 451 Mass. 43, 51 (2008).
Arrest of the Defendant
The discovery in the Gallant of cocaine packaged in a manner consistent with a retail drug transaction that Aguiar suspected had occurred provided probable cause to arrest the defendant for an illegal distribution of narcotics. “ ‘[PJrobable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense.’ ’ ’’Probable cause" is a relatively low threshold,’ requiring only sufficiently trustworthy information to instill in a reasonable person the requisite belief of criminality." ’ “ Paquette v. Commonwealth, 440 Mass. 121, 132 (2003) (citations omitted).
Search of the Oldsmobile
The objective basis for the police to have probable cause to arrest the defendant provided, as well, probable cause to believe that contraband and evidence of a narcotics transaction were present in the vehicle. Commonwealth v. Motta, 424 Mass. 117, 120 (1997). As such, a warrant was unnecessary to obtain, and the ensuing search was reasonable. Id. at 124. See also Commonwealth v. Garden, 451 Mass. at 51. Commonwealth v. Eggleston, 71 Mass.App.Ct. 363 (2008).
ORDER
The defendant’s motion to suppress is DENIED.

The defendant was not in the Gallant. Thus, he relies on a theory of “target standing” to bring this aspect of his motion. Target standing has been rejected by the U.S. Supreme Court for federal constitutional purposes. Rakas v. Illinois, 439 U.S. 128, 133-38 (1978). The SJC has not mled it out as a means for relief under Article 14 in circumstances of “distinctly egregious police conduct,” Commonwealth v. Scardamaglia, 410 Mass. 375, 380 (1991). However, the SJC has otherwise rejected the doctrine. Id. See also Commonwealth v. Kirshner, 67 Mass.App.Ct. 836, 845, n.9 (2006). There was no egregious police misconduct in this case. Nevertheless, the Court addresses the defendant’s challenge to the evidence seized from the Gallant as if he had standing.