NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11803


COMMONWEALTH  vs.  SHABAZZ AUGUSTINE.



Suffolk.     April 9, 2015. - August 18, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Cellular Telephone.  Constitutional Law, Search and seizure,
     Probable cause.  Search and Seizure, Probable cause,
     Warrant, Affidavit.  Probable Cause.  Practice, Criminal,
     Warrant, Affidavit.



Indictment found and returned in the Supreme Judicial Court
for the county of Suffolk on July 29, 2011.

After review by this court, 467 Mass. 230 (2014), a
pretrial motion to suppress evidence was heard by Peter B.
Krupp, J.

An application for leave to file an interlocutory appeal
was allowed by Spina, J. in the Supreme Judicial Court for the
county of Suffolk.


Cailin M. Campbell, Assistant District Attorney (Mark T.
Lee, Assistant District Attorney, with her) for the
Commonwealth.
Jessie J. Rossman (Matthew R. Segal with her) for the
defendant.
Matthew J. Tokson, of the District of Columbia, Elizabeth
A. Lunt, Kevin S. Prussia, Kelly Halford, & Chauncey B. Wood,

for Massachusetts Association of Criminal Defense Lawyers, amicus curiae, submitted a brief.

BOTSFORD, J.  In Commonwealth v. Augustine, 467 Mass. 230, 232 (2014) (Augustine I), S.C., 470 Mass. 837 (2015), this court held that the defendant had a reasonable expectation of privacy in the historical cell site location information[1] (CSLI) relating to his cellular telephone, and that therefore, the warrant requirement of art. 14 of the Massachusetts Declaration of Rights applied to that information.  We remanded the case to the Superior Court to determine whether, in the particular circumstances of this case, the Commonwealth is able to meet that warrant requirement through a demonstration of probable cause.  Id.  For the reasons to be discussed, we conclude that

---

[1] "The term 'cell site location information' (CSLI) refers to a cellular telephone service record or records that contain 'information identifying the base station towers and sectors that receive transmissions from a [cellular] telephone.'. . . 'Historical' CSLI refers to CSLI relating to and generated by cellular telephone use that has 'already occurred at the time of the order authorizing the disclosure of such data'" (quotations and citation omitted).  Commonwealth v. Augustine, 467 Mass. 230, 231 n.1 (2014), S.C., 470 Mass. 837 (2015) (Augustine I). In essence, historical CSLI provides a record of the base stations, also referred to as cell sites or cell towers, to which a particular cellular telephone connected during any calls made or received within the period governed by the order.  See id. at 237-238.  The data can be used to approximate the location of a cellular telephone handset that was active at a particular time.  See id. at 238.  For a more detailed discussion of this technology, see id. at 237-239.

the Commonwealth has done so with respect to the defendant's

CSLI records for the period from August 24 to August 26, 2004.[2]

    1.  <u>Background</u>.  a.  <u>Procedural history</u>.  We summarize the

procedural background of this case that led to our decision in

<u>Augustine I</u>, and to the present issue.  On September 22, 2004,

in connection with an investigation into the death of Julaine

Jules, the Commonwealth filed in the Superior Court an

application for an order to obtain from the defendant's cellular

service provider certain records, including CSLI, for the

fourteen-day period beginning August 24, 2004, the last day that

Jules was seen alive.  <u>Augustine I</u>, 467 Mass. at 232-233.  A

Superior Court judge allowed the request pursuant to 18 U.S.C.

§ 2703(d) (2006) of the Federal Stored Communications Act, which

permits a court of competent jurisdiction to issue an order

compelling a cellular telephone company to disclose certain

customer records to a governmental entity upon a showing of

"specific and articulable facts . . . that there are reasonable

grounds to believe" that the records sought are "relevant and

material to an ongoing criminal investigation."  See <u>Augustine</u>

<u>I</u>, <u>supra</u> at 235-236.  Based on that order, the Commonwealth

appears to have received at least sixty-four pages of CSLI

---

[2] We acknowledge the amicus brief submitted on behalf of the defendant by the Massachusetts Association of Criminal Defense Lawyers.

records relating to the defendant's cellular telephone. Id. at 234.[3]

On July 29, 2011, the defendant was indicted for Jules's murder. Id. On November 15, 2012, he filed a motion to suppress evidence of his CSLI, in which he argued the Commonwealth had obtained in violation of his rights under the Fourth Amendment to the United States Constitution and under art. 14. Id. A Superior Court judge allowed the motion, deciding in substance that, under art. 14, obtaining the defendant's CLSI constituted a search in the constitutional sense. Id. In Augustine I, we agreed, and concluded that such a search would be permissible under art. 14 only upon a showing of probable cause. Id. at 231-232. We vacated the allowance of the motion to suppress and remanded the case to the Superior Court for consideration whether the affidavit that the Commonwealth had originally submitted in support of the order pursuant to 18 U.S.C. § 2703(d) (§ 2703[d] order) demonstrated probable cause. Augustine I, 467 Mass. at 232, 255-256.

A different Superior Court judge (motion judge) held a hearing on the issue whether the affidavit met the probable cause standard required under Augustine I. The motion judge

_____

[3] The Commonwealth also sought and obtained an order pursuant to 18 U.S.C. § 2703(d) (2006) for Julaine Jules's CSLI records for the same time period. This CSLI is not at issue here.

ruled that the standard had not been met, and again allowed the defendant's motion to suppress evidence of his CSLI. The Commonwealth sought interlocutory review of the order pursuant to Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996), and G. L. c. 278, § 28E, which a single justice allowed and ordered to proceed before this court.

b. <u>Facts</u>. The sworn affidavit in support of the § 2703(d) order was submitted by State police Trooper Mary McCauley and recited the following facts. In August, 2004, Jules had two boy friends, the defendant and Marlon Barnett. Jules lived with her family in Malden; the defendant lived in the Dorchester section of Boston; and Barnett lived in Fort Lauderdale, Florida. During the weekend of August 21 and 22, Jules told the defendant that she was too busy to see him, but in fact, she spent the weekend with Barnett, who had flown to Massachusetts from Florida.[4] The defendant did not know about Jules's relationship with Barnett until shortly before Jules disappeared.

On August 24, 2004, Jules left Malden and went to her job at a company located on Congress Street in Boston. Her shift that day was from 3 <u>P</u>.<u>M</u>. to 11 <u>P</u>.<u>M</u>., but she left her work station at 7:10 <u>P</u>.<u>M</u>. with only her cellular telephone and the keys to her motor vehicle, and never returned. Her wallet,

---

[4] Marlon Barnett flew back to Florida on August 23, 2004.

driver's license, and other personal items remained at her work station. Approximately five hours later, at 12:20 A.M. on August 25, police discovered Jules's vehicle engulfed in flames in a parking lot near a pharmacy in Revere. A key was in the ignition, and an accelerant had been used to set the fire. Jules's father reported her missing on August 25.

Melissa Mitchell, the defendant's cousin, reported to police investigators that at approximately 5:15 P.M. on August 24, the defendant telephoned her and asked her to telephone Jules at work, and to say that the defendant was sick and needed Jules to come visit him at his home right away. Mitchell said she thought she was setting up a romantic evening for the defendant and Jules. The next day, Mitchell telephoned the defendant and asked him how things had gone with Jules the evening before. The defendant said that Jules had been a little upset, but that the evening went well. However, the following day, the defendant telephoned Mitchell and told her that Jules had been reported missing, and that in fact he had not seen Jules on the night of August 24. Mitchell asked the defendant over the telephone and later in person why he had said earlier that he saw Jules. The defendant said he did not know.

On August 28, the defendant admitted in an interview with police investigators to having asked Mitchell to contact Jules on August 24, but he claimed that Jules never came to his home

and that he had not seen her since August 19.  When asked whether he would appear on any surveillance video recorded near Jules's work on the night that she disappeared, the defendant "became very upset and started to cry and moan."  He eventually requested a lawyer and the interview stopped.

On September 8, 2004, Mitchell played for McCauley a voicemail message that Mitchell had received from the defendant. In the message, the defendant said, "I'm prepared to take all the consequences right now . . . nothing is really happening . . . my emotions got the better of me, I mean really, really got the better of me . . . I'm going through some stuff . . . so far the coast is clear . . . I'm just waiting . . . that was just nature taking [its] course."[5]

On September 19, a body wrapped in plastic bags was discovered floating in the Charles River.  The body was decomposing and appeared to have been in the water for some time, but an analysis of dental records confirmed that it was Jules.  Her body was found with a chain around it that had two weights attached, and electrical cord around her ankles.  The medical examiner found no apparent cause of death, although as

---

[5] Trooper Mary McCauley's affidavit does not indicate when Melissa Mitchell received the voicemail message from the defendant, but the reasonable inference is that the message was left sometime after August 24, 2004.

of the date of McCauley's affidavit (September 22, 2004),
further examination and toxicology analysis remained pending.

In the course of her investigation, McCauley reviewed the
records of incoming and outgoing calls for Jules's and the
defendant's cellular telephones.[6,7]  Jules's records indicated a
brief incoming call from the defendant's home telephone on
August 24, 2004, at 5:36 P.M., while Jules presumably was still
at work.  At 9:31 P.M., there was a call from her cellular
telephone to a pharmacy in Revere, although the pharmacy was
closed at that time.  Then, between 11:39 P.M. on August 24 and
8:59 P.M. on August 25, there were a number of calls from
Jules's cellular telephone to her work and cellular telephone
voicemail messaging systems.  At 10:50 P.M. on August 25, there
was a call between Jules's cellular telephone and one of
Barnett's telephone numbers that lasted seventeen minutes.
Barnett told an investigator that the only thing out of the
ordinary about this telephone call was that Jules was
whispering, and that Jules told him she was doing so because she

_____

[6] The defendant's cellular telephone belonged to Keisha
Smith.  Although the telephone was in Smith's name, the
defendant paid the bills for this telephone and used it
exclusively.

[7] The record does not indicate by what means McCauley was
able to obtain Jules's and the defendant's telephone records,
but we assume, as we did in Augustine I, 467 Mass. at 233 n.4,
that the records were subpoenaed pursuant to G. L. c. 271,
§ 17B.

was at home in Malden and was trying to avoid disturbing her brother, who was sleeping. However, Jules was not at home at this time, because her father already had reported her missing. Another call went out from Jules's cellular telephone to Barnett's cellular telephone at 9:35 A.M. on August 26, but at that point, Barnett was on a flight to Haiti.[8]

The defendant's cellular telephone records reflected a series of calls on August 24 between 4:52 P.M. and 5:07 P.M. to Mitchell's work and cellular telephone numbers. At 6:11 P.M., there was a brief call from the defendant's cellular telephone to Barnett's home telephone number, although Barnett told police that he did not know the defendant. Approximately one-half hour later, there was a brief call to Jules's work telephone number, and at 9:03 P.M., there was an incoming call from Mitchell's home telephone. Approximately four hours later, on August 25 at 12:52 A.M., about one-half hour after Jules's car was discovered burning, the defendant telephoned Keisha Smith, another girl friend of his, with whom the defendant had lengthy conversations almost every night. This particular call lasted over ninety minutes, while, according to what Smith told McCauley, the defendant took various forms of public transportation home to Dorchester. Despite the late hour, the defendant told Smith he

---

[8] The telephone call to Barnett on the morning of August 26, 2004, was the last outgoing call from Jules's cellular telephone mentioned in McCauley's affidavit.

was out doing errands for his mother. At one point, Smith heard a bus driver tell the defendant that he would take the defendant to "Sullivan Square," but that the bus had to go to "Salem" first. From Sullivan Square, the defendant took a bus to the Haymarket area of Boston. From there, he took a taxicab to the JFK Massachusetts Bay Transportation Authority (MBTA) station, and then he walked home.

From August 25 to at least September 2, the defendant's cellular telephone continued to make and receive calls. McCauley's affidavit averred that the defendant's CSLI during this time period continued to be relevant to the ongoing criminal investigation because it would be helpful to the investigation to know where the defendant was between the times when Jules disappeared and when her body was found in the Charles River.

2. Discussion. In Augustine I, we determined that in order for the defendant's motion to suppress his historical CSLI evidence to be denied on remand, the affidavit submitted in support of the § 2703(d) order would have to demonstrate probable cause to believe "that a particularly described offense has been, is being, or is about to be committed, and that the [CSLI being sought] will produce evidence of such offense or will aid in the apprehension of a person who the applicant has probable cause to believe has committed, is committing, or is

about to commit such offense."  Augustine I, 467 Mass. at 256,

quoting Commonwealth v. Connolly, 454 Mass. 808, 825 (2009).  We

applied the requirement of probable cause to the defendant's

historical CSLI because, at least where the information at issue

covered a two-week period, analysis of this information was akin

to tracking the defendant's movements for an extensive time

period, and constituted a search under art. 14.[9]  Augustine I,

supra at 254-255.

The motion judge concluded, and we agree, that the first

prong of the test quoted in Augustine I -- whether the affidavit

demonstrated probable cause to believe that an offense has been,

is being, or is about to be committed, see id. at 256 -- is not

reasonably in dispute.  Jules's motor vehicle appears to have

---

[9] In Augustine I, we focused on whether obtaining the
defendant's CSLI constituted a search under art. 14, rather than
under the Fourth Amendment, because a majority of the Federal
courts that had examined this issue had concluded that an
individual has no reasonable expectation of privacy in his or
her CSLI, and therefore the warrant requirement of the Fourth
Amendment does not apply.  See Augustine I, 467 Mass. at 243-244
& nn.25, 26.  The defendant nevertheless argues in his brief
that even if McCauley's affidavit demonstrated probable cause to
believe that the CSLI in this case will produce evidence of the
crimes under investigation, the CSLI must be suppressed because
it was obtained in violation of the Fourth Amendment.  This
argument fails to address the Federal cases that have come to
the opposite conclusion, which we noted in Augustine I, supra.
Because the defendant does not contend that there has been a
substantial change in the Federal courts' analysis of this
issue, nor does it appear from our research that he could have
done so, the defendant's argument under the Fourth Amendment
fails, and we do not discuss it further.

been deliberately set on fire in violation of G. L. c. 266, § 5 (arson of a motor vehicle), and the circumstances surrounding her disappearance and the discovery of her body strongly suggest that she was murdered. We also agree with the motion judge that there was no suggestion in McCauley's affidavit that the police were seeking information about the defendant's past whereabouts, as reflected in his CSLI, so that the police could apprehend him in connection with either or both of these two offenses. Thus, the only issue remaining is whether the affidavit supplies probable cause for belief that the defendant's CSLI "will produce evidence" of one or both offenses under investigation. See Augustine, supra. On this, we disagree with the motion judge's determination that the affidavit does not provide the requisite probable cause, and conclude that the defendant's CSLI likely will produce evidence of these offenses.[10]

In this case, where the Commonwealth possesses the defendant's CSLI and seeks to use it to determine his past locations during a particular time period, whether there is

---

[10] The defendant argues that we should afford deference to the motion judge's conclusion that there was no probable cause. Although it is true that "a reviewing court gives considerable deference to [a] magistrate's determination of probable cause," Commonwealth v. Anthony, 451 Mass. 59, 69 (2008), as the defendant acknowledges, here, there has been no such determination. Moreover, "[b]ecause a determination of probable cause is a conclusion of law, we review a search warrant affidavit de novo." Commonwealth v. Foster, 471 Mass. 236, 242 (2015).

probable cause to believe that disclosure of these past locations will produce evidence of the two offenses at issue turns on essentially the same inquiry that governs other search warrants:  namely, whether there is "evidence that establishes a 'substantial basis' . . . to believe 'that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched at the time the search warrant issues.'"  Commonwealth v. Banville, 457 Mass. 530, 538 (2010), quoting Commonwealth v. Upton, 394 Mass. 363, 370 (1985), and Commonwealth v. Cinelli, 389 Mass. 197, 213 (1983), cert. denied, 464 U.S. 860 (1983), respectively.  This test requires a higher degree of confidence that the CSLI will yield evidence of criminal activity than that which is necessary for an order under § 2703(d), which requires only that the government show "specific and articulable facts" that the CSLI is "relevant and material to an ongoing criminal investigation."  See Augustine I, 467 Mass. at 236 (standard required for § 2703[d] order is less than probable cause).  Although "definitive proof of criminal activity" is not necessary in order to demonstrate probable cause, see Commonwealth v. Anthony, 451 Mass. 59, 69 (2008), "[s]trong reason to suspect is not adequate."  Commonwealth v. Foster, 471 Mass. 236, 242 (2015), quoting Upton, supra at 370.  The inquiry "begins and ends with 'the four corners of the affidavit.'"

Commonwealth v. O'Day, 440 Mass. 296, 297 (2003), quoting

Commonwealth v. Villela, 39 Mass. App. Ct. 426, 428 (1995).  The

affidavit is to be "considered as a whole and in a commonsense

and realistic fashion; inferences drawn from the affidavit need

only be reasonable, not required."  Connolly, 454 Mass. at 813.

See Banville, supra at 538 ("[a]pplications for search warrants

should be read with a practical, nontechnical conception of

probable cause").

Given the particular facts of this case as presented in the

affidavit, we agree with the defendant that his CSLI is related

to the two offenses under investigation only to the extent that

there is reason to believe that the defendant committed one or

both offenses.[11]  First, with respect to the arson investigation,

at the time that the affidavit issued, the only apparent utility

in knowing the defendant's whereabouts was to determine whether

the defendant was near the parking lot in Revere where Jules's

---

[11] The Commonwealth argues that the language used in
Augustine I does not clearly require a showing of probable cause
that the subject of an order to produce CSLI appear to have
committed the crimes under investigation, see 467 Mass. at 256,
nor is it a requirement of search warrants generally that the
person to whom a search warrant is directed must be suspected of
a crime.  See Matter of a Grand Jury Investigation, 427 Mass.
221, 225 (1998), cert. denied, 525 U.S. 873 (1998).  We do not
dispute these points, but, for the reasons discussed infra, we
have concluded that based on the facts in this case, there is no
way to demonstrate probable cause to obtain the defendant's CSLI
unless he appears to be implicated in one or both of the crimes
at issue here.

motor vehicle was set ablaze around the time that the fire was discovered, which would suggest the defendant's involvement in that offense.  Second, considering the murder, and given that the Commonwealth had Jules's CSLI for the relevant time period, see note 3, supra, the defendant's CSLI had the potential to reveal, or at least suggest, whether the defendant was with Jules at any point from the time she left work until the time that the calls from her cellular telephone ceased.  If the defendant was with her, based on the information provided in McCauley's affidavit, a reasonable inference exists that the defendant may have been the last person to have seen Jules alive, which would be relevant to determining whether he was responsible for her death.[12]  Cf. Commonwealth v. Gentile, 437 Mass. 569, 573-574 (2002) (facts that victim was last heard from while she was in defendant's truck, and that defendant was last person to have seen her, contributed to finding of probable cause to believe evidence related to victim's kidnapping and death would be found in truck).  Because the facts described in the affidavit suggest no other apparent uses for the defendant's

---

[12] The Commonwealth suggests that knowing the defendant's location shortly before Jules's death is relevant to the investigation generally because it would allow the Commonwealth to infer her location during the time that the defendant and Jules appear to have been together.  However, the defendant's CLSI is not as indicative of Jules's location as her own CSLI is, and the Commonwealth already has her CSLI for the relevant time period.

CSLI, in the context of the investigation as it existed when the Commonwealth sought the § 2703(d) order, the probable cause inquiry is properly focused on whether there is reason to believe the defendant committed the arson, the murder, or both.

We begin our analysis with the arson, drawing all reasonable inferences and keeping in mind the affidavit as a whole. First, it is reasonable to conclude that Jules left her place of work in her vehicle on August 24, 2004, or at least that she intended to take her vehicle, because she took the keys to it with her. It also is reasonable to conclude, given the absence of any evidence suggesting otherwise, that Jules did not set fire to her own vehicle, and thus one can infer that whoever burned it probably obtained it from her, by force or with her permission. The defendant appears to have had the opportunity to do this. The defendant admitted to having asked Mitchell to lie to Jules and tell her that he was sick so that Jules would visit him at his home that evening. Although the defendant later denied seeing Jules that night, he first told Mitchell that he did see Jules, and he offered no explanation as to why he would have said that he saw her when in fact he did not. These facts provide a reasonable basis to believe that the defendant did see Jules the night of August 24, 2004, suggesting the possibility that he was the one who took her vehicle from her and set it on fire.

The defendant's presence somewhere north of Boston at 12:52 A.M. on August 25, approximately one-half hour after police found Jules's burning motor vehicle, lends support to this theory. Although it is unclear precisely where the defendant was when he called Smith (a fact we presume the Commonwealth hopes to discover through the defendant's CSLI) the defendant appears to have boarded a bus that was heading to the Sullivan Square MBTA station via Salem.[13] Neither of these locations is particularly close to Revere, where Jules's vehicle was discovered, but all three locations are north of Boston, suggesting that the defendant could have driven Jules's vehicle to Revere, set it ablaze, and then taken public transportation back to his home in Dorchester.[14] In addition, the defendant

---

[13] The affidavit does not specify that the bus was going to the Sullivan Square station of the Massachusetts Bay Transportation Authority (MBTA), but simply indicates that it was going to "Sullivan Square." However, because the defendant transferred to a bus to Haymarket upon reaching Sullivan Square, it is reasonable to infer that the Sullivan Square to which the bus was headed was the MBTA station.

[14] The affidavit does not set out the geographic locations of the city of Salem, the Sullivan Square MBTA station, and Revere, but we can and do take judicial notice of these locations. See Federal Nat'l Mtge. Ass'n v. Therrien, 42 Mass. App. Ct. 523, 525 (1997) (facts that are verifiably true, such as geographic locations, are susceptible to judicial notice). We also take judicial notice of the fact that there is a Salem Street in Revere, and although the affidavit contains insufficient information to determine whether the bus that the defendant was on was traveling to the city of Salem or to Salem Street in Revere, we note that the latter is possible and would

told Smith that he was out doing errands for his mother at this time, a fact that seems implausible given the early morning hour.

The remainder of the affidavit offers significant support for the conclusion that the defendant committed the arson, and implicates him in the murder as well. The defendant's recent discovery that Jules had another boy friend could have motivated the defendant to harm Jules. Cf. Commonwealth v. Taylor, 426 Mass. 189, 194-195 (1997) (possible motive for crime contributed to probable cause justifying search warrant). Moreover, the defendant behaved suspiciously multiple times in the days following Jules's disappearance. In addition to changing his story about whether he had seen Jules on August 24 in successive conversations with Mitchell, the defendant cried and moaned in response to the question whether he would appear on surveillance video near Jules's workplace on the night she disappeared. The defendant also left Mitchell what reasonably could be interpreted as a highly incriminating voicemail message. These facts do not reveal exactly what the defendant did on the night of August 24, 2004, but they reasonably suggest the defendant's involvement in the harm that befell Jules. Cf. Commonwealth v. Kaupp, 453 Mass. 102, 113 (2009), quoting Commonwealth v.

_____

lend even greater support to the theory that the defendant was in Revere around the time of the fire.

Riggins, 366 Mass. 81, 88 (1974) ("peculiar behavior and evasive replies" to police, when coupled with other facts, support finding of probable cause to conduct search).

Because Jules disappeared on the same night that her motor vehicle was discovered burning and does not appear to have been seen alive thereafter, it is also reasonable to conclude that the person responsible for the arson was also responsible for the murder.[15]  Accordingly, the basis provided by the affidavit for concluding that probable cause to believe the defendant committed the arson in turn provides a basis for concluding that he was involved in committing the murder.  In sum, considering the affidavit as a whole, there is a substantial basis, and thus probable cause, to conclude that the defendant committed both crimes.[16]

---

[15] It is true that calls continued to go out from Jules's cellular telephone until the morning of August 26, 2004, including a seventeen-minute call to Barnett.  This telephone call raised a number of questions, including where Jules was when she made the call, and whether she herself made the call at all; the affidavit does not answer them.  Although one possible inference is that Jules was alive and using her telephone during this period, it is also possible that someone else had her telephone and, through whispering, impersonated her voice during the call with Barnett.  Either way, given the circumstances surrounding Jules's death, it remains reasonable to infer that the murder and the arson were related events.

[16] As an example of a case where there was insufficient evidence to support probable cause for a warrant, the defendant relies on Commonwealth v. Kaupp, 453 Mass. 102, 111 (2009), in which a single suspicious statement (that the defendant "could not guarantee that there were not any child pornographic images

The final question is whether the Commonwealth has demonstrated probable cause for obtaining the defendant's CSLI records for the two-week period beginning August 24, 2004.[17]  As noted previously, the defendant's location from the evening of August 24 until the last call went out from Jules's cellular telephone will likely produce evidence of whether the defendant

_____

stored in electronic format within his computer"), along with limited circumstantial evidence, did not provide a substantial basis to believe that child pornography would be found in the defendant's private files.  In Kaupp, however, the combined evidence in support of the search warrant was significantly weaker than in this case.  There, the court noted the evidence suggesting that child pornography would be found in the defendant's private files was limited to (1) the single suspicious statement, (2) the fact that a copyrighted, nonpornographic movie appeared to have been shared between the defendant's computer and another computer on the same network, and (3) the fact that child pornography had been observed in the other computer's files that were available for sharing; thus, the Commonwealth's argument that there was probable cause for the search hinged upon the single statement and upon a suspect assumption that because the defendant appeared to have shared the movie with the other computer, he also shared the child pornography.  Id. at 111-113.  In comparison, here, the substantial basis to believe that the defendant committed the two crimes is based on multiple facts that suggest that the defendant had both the opportunity and the motive to harm Jules, as well as on a number of suspicious acts on the part of the defendant, the timing and content of which suggest his involvement in the crimes under investigation.

[17] In Augustine I, the defendant represented that the CSLI records at issue actually covered a period that was longer than two weeks, although exactly how much longer was unclear.  See 467 Mass. at 234 n.8.  However, because the original order directing the defendant's cellular telephone service provider to produce the defendant's CSLI to police encompassed only those records for the fourteen-day period beginning August 24, 2004, the Commonwealth may only use those records that were covered under the order.

was in Revere around the time of the arson as well as whether he was the last person to have been with Jules.  In addition, because Jules's body was not discovered in the Charles River until September 19, and had been in the water for some time -- although exactly how long was unclear -- it is reasonable to infer that whoever committed the murder may have deposited her body in the river at some point on or before September 6 (the last day covered under the order to provide CSLI).  Because we have concluded that there is probable cause to believe that the defendant was that person, his locations during that time period are likely to produce evidence of where and when the body was placed in the river.

3.  Conclusion.  For the reasons discussed, the order allowing the defendant's motion to suppress is reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

So ordered.