LENK, J. (dissenting).
As is hardly unusual with motions to suppress, **731 the police hunch here proved to be quite right: the defendant was indeed involved in a series of unsolved breaking and entering cases. From April to September 2012, the defendant wore a global positioning system (GPS) device; it had been attached to his ankle at his request, in order that he remain on probation after he acknowledged that he had violated his terms of probation. While wearing the device, he nonetheless committed a series of break-ins in Hanson, Mansfield, and Pembroke. The break-ins went undetected at the time, and the defendant was released from probation. Approximately ten months later, in July 2013, the defendant again found himself subject to GPS monitoring, this time as a condition of pretrial release in connection with charges stemming from an incident of domestic violence in a different county. See Commonwealth v. Johnson, 91 Mass. App. Ct. 296, 297, 75 N.E.3d 51 (2017).[1] In yet another jaw-dropping act *689 of audacity, while wearing the second GPS device, he committed a breaking and entering in the West Roxbury section of Boston in August 2013. In September 2013, the defendant was arrested in Randolph near the scene of a separate break-in.
It is as a result of this arrest, approximately one year after the termination of the defendant's probation, that Marshfield police sought to determine whether he had been involved in ten unsolved break-ins that occurred between May and September 2012. To that end, the government began its warrantless search of the defendant's year old GPS data collected during his 2012 probationary period. It is this search, acknowledged by the court to have been based on no more than a police hunch, that the defendant urges be suppressed. See ante at ----, 119 N.E.3d 669. While his acts are chutzpah on stilts, I am constrained to agree with the defendant: our jurisprudence requires suppression. Consistent with our case law, the government needed a warrant before conducting its search of historical GPS records at a time when the defendant was not a probationer.
I do not disagree with the court that there is sufficient evidence to support the defendant's convictions. Nor do I disagree that the Commonwealth is entitled to accumulate location records of individuals whose GPS coordinates are monitored by the probation **732 department, and that it may maintain a copy of those records even after termination of the individual's probationary supervision. As evidenced here, such records later may prove useful. But the court's decision today has an impact on not only this defendant but, at a minimum, all individuals who have ever worn a GPS device while on probation.
Where my reasoning diverges from that of my colleagues is with respect to the level of judicial oversight required whenever the Commonwealth seeks to search the location history of an individual who once was -- but, at the time of the search, is not -- a probationer.[2] The court today determines that no judicial oversight of any kind is necessary. Because, in my view, art. 14 of the Massachusetts Declaration of Rights and the Fourth Amendment to the United States Constitution require more, I respectfully dissent.
*690 Two relevant time periods. The court is correct to separate this case into two moments of constitutional analysis: "the initial imposition of GPS monitoring for the purposes of probation," on the one hand, and the "subsequent review of the historical GPS location data for investigatory purposes after the defendant's probationary period had expired," on the other. Ante at ----, 119 N.E.3d 669. The court determines, and I agree, that the attachment of the GPS device in April 2012, at the defendant's own request, was a search, and that the search was lawful here. See Grady v. North Carolina, --- U.S. ----, 135 S.Ct. 1368, 1371, 191 L.Ed.2d 459 (2015) (electronic monitoring by physical bodily intrusion is search);
**733 Commonwealth v. Feliz, 481 Mass. 689, 119 N.E.3d 700, 2019 WL 1339199 (2019) (reviewing court must balance government interests in imposing GPS monitoring against defendant's reasonable expectation of privacy). That lawful intrusion continued until September 2012, when the GPS device was removed and probationary supervision was terminated. Approximately one year later, police sought to reexamine the defendant's old GPS records. It is at that point, after the completion of probation, that the court fails to consider the defendant's actual and reasonable expectation of privacy with respect to the history of his movements. See Commonwealth v. Augustine, 467 Mass. 230, 242, 4 N.E.3d 846 (2014), S.C., 470 Mass. 837, 26 N.E.3d 709 and 472 Mass. 448, 35 N.E.3d 688 (2015) (search occurs when government intrudes on actual and reasonable expectation of privacy).
It is not implausible that, as the defendant asserts, once he was released from probation and the GPS device was removed from his ankle, he came to believe that the police could not "access [his] GPS data without a warrant." The defendant states that he had been ordered to wear the GPS monitor "as a condition of [his] Probation" and was "told that the purpose of the GPS bracelet was to ensure that [he] did not enter any exclusionary zones." Upon the successful completion of probation and the removal of the monitoring device, such insurance no longer was necessary, and the defendant received no indication that his location history would continue to be examined.
The more significant question, and the one to which the court devotes the majority of its discussion, is whether an individual reasonably may expect his or her location history to become private after the probation department no longer requires it for the purposes of monitoring the individual's progress as a probationer. To answer that question, we must turn to our jurisprudence regarding the expectations of privacy that individuals maintain in their historical location information.[3]
**734 *691 Historical location information. "[U]nder art. 14, a person may reasonably expect not to be subjected to extended GPS electronic surveillance by the government, targeted at his movements, without judicial oversight and a showing of probable cause." Augustine, 467 Mass. at 248, 4 N.E.3d 846, quoting Commonwealth v. Rousseau, 465 Mass. 372, 382, 990 N.E.2d 543 (2013). This court has recognized that the history of an individual's movements, over a sufficiently lengthy period of time, reveals a great number of personal details. When the government learns where people have been, it learns
"not just where people go -- which doctors, religious services, and stores they visit -- but also the people and groups they choose to affiliate with and when they actually do so. That information cuts across a broad range of personal ties with family, friends, political groups, health care providers, and others.... [It] can provide an intimate picture of one's daily life." (Citation omitted).
See Augustine, supra. The United States Supreme Court similarly has observed that historical location information reveals "familial, political, professional, religious, and sexual associations" (citation omitted). Carpenter v. United States, --- U.S. ----, 138 S.Ct. 2206, 2217, 201 L.Ed.2d 507 (2018). "These location records hold for many Americans the privacies of life" (quotations and citation omitted). Id.
Accordingly, both this court and the Supreme Court, applying art. 14 and the Fourth Amendment, respectively, have required a search warrant supported by probable cause prior to examining the long-term movements of an individual, as approximated by the movements of his or her cellular telephone through cell site location information (CSLI). See Carpenter, 138 S.Ct. at 2221 ; Augustine, 467 Mass. at 256, 4 N.E.3d 846. As the Supreme Court has observed, "when the Government tracks the location of a cell phone it achieves near perfect surveillance, as if it had attached an ankle monitor to the phone's user." Carpenter, supra at 2218.
This case goes a step further, asking us to consider what reasonable expectation of privacy a former probationer has when **735 the government literally has "attached an ankle monitor" to that individual's leg. In such a case of historical "perfect surveillance," the individual's privacy interest in the data collected ought not be less than that which we recognize in the case of cellular telephones.
Yet the court concludes that no reasonable expectation of privacy was implicated here. Had the police attempted to retrieve the defendant's location history by contacting his cellular telephone provider, our jurisprudence plainly would have required a warrant supported by probable cause. See Augustine, 467 Mass. at 254-255, 4 N.E.3d 846. The court, however, maintains that historical location information collected by a GPS ankle monitor is distinguishable from that collected by a cellular telephone for four reasons: (1) probationers have diminished expectations of privacy; (2) the government is permitted to reexamine records it has collected lawfully; (3) we have permitted similar warrantless searches in the context of matching deoxyribonucleic acid (DNA) profiles; and (4) relatively little information was examined *692 in this case. In my view, none of these arguments is persuasive.
1. Probationers' and former probationers' expectations of privacy. The court notes that a probationer has a diminished expectation of privacy relative to an "ordinary citizen." Ante at ----, 119 N.E.3d 669. A "diminished" expectation of privacy, however, is not "no" expectation of privacy. We previously have observed that probation is not imprisonment; indeed, it is not even on a par with parole. See Commonwealth v. Moore, 473 Mass. 481, 485-486, 43 N.E.3d 294 (2016) ("parole is more akin to imprisonment than probation is" [citation omitted] ). Accordingly, "art. 14 bars the imposition on probationers of a blanket threat of warrantless searches." Commonwealth v. LaFrance, 402 Mass. 789, 795, 525 N.E.2d 379 (1988) (requiring reasonable suspicion to search probationer's home and person, even where probationer consented to suspicionless searches).
The court does not grapple with the implications of LaFrance. Instead, it determines that, because the defendant knew he had been monitored via the GPS device, he could not reasonably expect his location to remain private when probation ceased. See ante at ----, 119 N.E.3d 669. Even if knowledge of government surveillance were sufficient to defeat a reasonable expectation of privacy while the defendant actually was on probation,[4] a point we need not address, the defendant's expectation of privacy would have changed **736 the day he completed his sentence. See United States v. Kincade, 379 F.3d 813, 870 (9th Cir. 2004) (Reinhardt, J., dissenting), cert. denied, 544 U.S. 924, 125 S.Ct. 1638, 161 L.Ed.2d 483 (2005) (defendant "has paid his debt to society," State has "cease[d] to have a supervisory interest over [him]," and he merits "full future expectation of privacy"); id. at 871-872 (Kozinski, J., dissenting) ("Once [defendant] completes his period of supervised release, he becomes an ordinary citizen just like everyone else. Having paid his debt to society, he recovers his full Fourth Amendment rights, and police have no greater authority to invade his private sphere than anyone else's").[5]
The defendant, it must be remembered, was not a probationer at the time the police searched his GPS data; his period of probation had terminated nearly a year earlier. Rather, the defendant had returned to society as an "ordinary citizen." See ante at ----, 119 N.E.3d 669. See also note 2, supra. Nonprobationers, including former probationers, enjoy the full protections *693 of art. 14 and the Fourth Amendment; for a nonprobationer, probable cause and a warrant are required to search historical location information.[6] See generally Carpenter, 138 S.Ct. at 2217 ; **737 Augustine, 467 Mass. at 254-255, 4 N.E.3d 846.
2. Reexamination of formerly obtained information. The court, however, appears to suggest that, because the GPS data had been collected lawfully by the probation department in the first instance, the Commonwealth is permitted to dip back into that well at any time. In other words, once the government permissibly has obtained information about an individual, that individual is deprived permanently of all expectation of privacy in that information.[7]
No reasonable person would expect, however, that the government, having lawfully obtained a copy of a suspect's historical CSLI, could post those records on the Internet or plaster them on billboards. "It would appear reasonable to expect that a government agency, to which a citizen is required to submit certain materials, will use those materials solely for the purposes intended and not disclose them to others in ways that are unconnected with those intended purposes."
**738 Commonwealth v. Buccella, 434 Mass. 473, 485, 751 N.E.2d 373 (2001), cert. denied, 534 U.S. 1079, 122 S.Ct. 810, 151 L.Ed.2d 695 (2002).[8] The *694 government's permitted use of information it obtains is limited, and the subject of the information retains reasonable expectations of privacy in it.
In the context of physical evidence, "[p]roperty seized pursuant to a search warrant must be restored to its owners when it is no longer needed." See Commonwealth v. Sacco, 401 Mass. 204, 207 n.3, 515 N.E.2d 1185 (1987), citing G. L. c. 276, § 3. Once the item is returned, the expectation of privacy is restored; to search the object again, probable cause and a warrant again are required.[9] That protection is not limited to physical objects; indeed, art. 14 and the Fourth Amendment are premised on privacy rights, not property rights. See Carpenter, 138 S.Ct. at 2213 ("the Court has recognized that property rights are not the sole measure of Fourth Amendment violations ... and expanded our conception of the Amendment to protect certain expectations of privacy as well" [quotations and citations omitted] ). As Professor Orin Kerr cautions, it is necessary to impose the same constitutional protections on a search of the government's copy of digital data as would be imposed on the search of the individual's copy of the same.[10] See Kerr, Searches and Seizures in a Digital World, 119 Harv. L. Rev. 531, 560 (2005).
Otherwise, it is not clear, from the court's reasoning, what prevents a police officer from adding every CSLI record he or she legally obtains, pursuant to a warrant, to a database of accumulated government intelligence regarding the movements and whereabouts of any individual. Nor is it clear when, if ever, judicial oversight would be exercised prior to permitting an officer -- operating even on an educated hunch -- from perusing **739 that data at any point in the future.[11] *695 Such an accumulation of data, whether limited to GPS records of probationers or expanded to GPS records of ordinary citizens, "never would [have been] available through the use of traditional law enforcement tools of investigation" (emphasis in original). See Augustine, 467 Mass. at 248, 254, 4 N.E.3d 846. "At bottom, we must assur[e] preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted" (quotation and citation omitted).[12] United States v. Jones, 565 U.S. 400, 406, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012). The construction of a database of individuals' location histories risks making "technologically feasible the Orwellian Big Brother." See United States v. White, 401 U.S. 745, 770, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971) (Harlan, J., dissenting). Our traditions require this risk be balanced with the measured check of judicial oversight.
3. DNA databases. The court asserts that there is nothing to fear from this new technology, as it merely "identifies [the defendant's] presence at the scene of a crime," not unlike comparing DNA sample against a government database. Ante at ----, 119 N.E.3d 669. Relying on Boroian v. Mueller, 616 F.3d 60, 67-68 (1st Cir. 2010), the court maintains that matching a probationer's DNA profile after the termination of probation does not violate a reasonable expectation **740 of privacy. See ante at ----, 119 N.E.3d 669.
DNA relates to an individual's identity; indeed, it "reveal[s] nothing more than the identity of the source." See Commonwealth v. Arzola, 470 Mass. 809, 816, 26 N.E.3d 185 (2015), cert. denied, --- U.S. ----, 136 S.Ct. 792, 193 L.Ed.2d 709 (2016). It may well be that individuals do not have a reasonable expectation of privacy in concealing their identity, i.e., their face, fingerprint, DNA, or other immutable identifiers, from the police. But location data reveals more.
Indeed, the United States Court of Appeals for the First Circuit reasoned that warrantless DNA-matching was permissible precisely because a DNA profile "does not reveal any new, private or intimate information about [the defendant]." See Boroian, 616 F.3d at 67. The same cannot be said of long-term GPS data. As we have observed, long-term location information can paint an "intimate picture of one's daily life" (citation omitted). Augustine, 467 Mass. at 248, 45" url="https://cite.case.law/citations/?q=4%20N.E.3d%20846">4 N.E.3d 846. See Carpenter, 138 S.Ct. at 2217.
It is one thing to permit an officer of the Commonwealth to examine, without cause, the presence of alleles across various DNA samples stored in a DNA database. It is quite another to allow that officer to examine the minute-by-minute location history of individuals over a period of months, revealing, as that analysis may, any number of "familial, political, professional, religious, and sexual associations" (citation omitted). See Carpenter, 138 S.Ct. at 2217.[13] Notably, and contrary to the court's *696 characterization, the Commonwealth's examination of location data in this case far exceeded merely identifying an individual's binary "presence."
4. Amount of information examined. The court takes pains to assure us that police "targeted their analysis" to "the time and location of particular criminal activity," such that their review **741 was "not a search in the constitutional sense." Ante at ----, 119 N.E.3d 669. The court previously has determined, for example, that police may examine up to six hours of historical location information from a cellular telephone provider without judicial oversight, as the duration is too short to infringe upon reasonable expectations of privacy.[14] See Commonwealth v. Estabrook, 472 Mass. 852, 858, 38 N.E.3d 231 (2015). The court suggests similar reasoning here: the examination of the defendant's historical location information was narrow, and ergo, it was not a search. The record, however, paints a different picture.
As a probationer, the defendant was monitored by means of a GPS device once every minute for a period of six months, from April to September 2012. According to the uncontroverted statements in the defendant's memorandum in support of his motion to suppress, Barbara McDonough, of the probation department, gave a presentation to police one year later, on October 9, 2013, detailing the defendant's GPS history. Marshfield police Detective Kim Jones subsequently cross-referenced that information with the dates of the break-ins.
At the time, police were investigating ten break-ins occurring between May and September 2012. In the case of one break-in on September 1, 2012, the homeowners had been away for the four-day Labor Day weekend, beginning on August 31, 2012, only to discover the break-in upon their return on September 3. Reviewing the defendant's GPS records, police determined that the defendant was in or near the house on the evening of September 1 and the early morning of September 2. It is difficult to imagine how police would have reached that conclusion without examining the defendant's location for the entire four-day period (ninety-six hours). The defendant's location history was further **742 examined with respect to the other nine break-ins.[15] *697 It is also clear that the search was not limited only to the dates and times during which the break-ins were believed to have actually occurred. At the nonevidentiary hearing on the motion to suppress,[16] the Commonwealth acknowledged that the probation department was "able to map [the] defendant's actions that were consistent with not only breaking into the houses," but also, in other instances, "prior to breaking into the houses, casing the houses."
Combined, it hardly overstates the record to say that the Commonwealth's search encompassed hundreds of hours of location information, spanning multiple days before and during potential periods of suspicious activity, throughout a several-month period. To be sure, the information proved useful. But I am not persuaded that the investigation was "too brief to implicate [a] person's reasonable privacy interest" (citation omitted). Contrast Estabrook, 472 Mass. at 858, 38 N.E.3d 231 (no warrant required to examine six hours of location information). Indeed, the motion judge made no such finding.[17] Accordingly, on the evidence before the motion judge, the defendant met his burden to show that the Commonwealth **743 violated his reasonable expectations of privacy. See Commonwealth v. Miller, 475 Mass. 212, 219-220, 56 N.E.3d 168 (2016). Before the search was undertaken, probable cause and a warrant should have been secured.
Having determined, instead, that the search was insufficiently extensive to merit constitutional protection, the court nonetheless acknowledges that a reasonable expectation of privacy may be implicated, "even for a probationer subjected to GPS monitoring," where police "map[ ] out months of the defendant's GPS location data ... over an extended and unnecessary period of time." See ante at ----, 119 N.E.3d 669. The court insists, however, that such a case, which "might raise different, more difficult constitutional questions" is not before us and "[w]e need not, and do not, decide that question today." Id. at ----, 119 N.E.3d 669.
I would require a warrant supported by probable cause even where fewer than *698 "months" of GPS data were examined, consistent with our jurisprudence in Augustine, 467 Mass. at 254-255, 4 N.E.3d 846, and Estabrook, 472 Mass. at 858, 38 N.E.3d 231. To the extent that the court is concerned that the review of "months" of historical GPS data raises "difficult constitutional questions," in my view, those questions are raised here. Evidence of such a months-long search was not before the motion judge, and therefore does not form the basis of my determination that the judge's denial of the motion to suppress was error. See Commonwealth v. Rivera, 441 Mass. 358, 367, 805 N.E.2d 942 (2004) ("Evidence adduced at trial but not before the motion judge ... cannot be determinative of the propriety of the motion judge's decision" [citation omitted] ). Insofar as the court's reasoning is premised on a finding that this search was "targeted," however, I note that the motion judge made no such finding, see note 17, supra, and the information now known to us does not support one.
Indeed, information developed following the denial of the motion to suppress suggests that the search in this case was much broader than the court is willing to acknowledge. In Johnson, 91 Mass. App. Ct. 296, 75 N.E.3d 51, to which the court itself cites, this defendant appealed from other charges stemming from the Commonwealth's search of his probationary GPS records. The same Barbara McDonough of the probation department conducted the GPS records searches in both cases. She testified as to the manner in which she conducted the search as follows:
"McDonough testified that she searched the defendant's minute-by-minute movements for the entire period he was monitored **744 by the GPS system, namely from July 8, 2013, forward. 'Each day was a 24-hour investigation on him to see where he was, until the time he came off the bracelet.' ... She reviewed several months' worth of historical data to determine the defendant's location and movements at all times of day and night, and overlaid the data on a map. The data revealed not only the defendant's location, but also his speed and direction. The data tracked the defendant into buildings, including private residences."
Id. at 318, 75 N.E.3d 51 (Wolohojian, J., dissenting). McDonough reported her findings in that case to Boston police in November 2013, less than one month after her report to the Marshfield police in this case. Although we do not have the benefit of McDonough's testimony in this case, it seems reasonable to conclude that her methods did not differ substantially between her two examinations of the same defendant's GPS records, conducted within the span of several weeks.
Evidence admitted at trial in this case corroborates McDonough's testimony regarding her meticulous methods. Exhibit 2A, the first of the Commonwealth's maps of the defendant's movements, is labeled as the defendant's "Position History" from "12:00:00 A.M. " to "11:59:59 P.M. " on September 1, 2012. The exhibit is only the first of several such maps. Taken together, it would appear that the Commonwealth examined the defendant's minute-by-minute movements for periods of twenty-four hours at a time over the course of several months, thus clearly exceeding the "targeted" analysis the court portrays, and raising the very questions the court leaves for another day. See ante at ----, 119 N.E.3d 669.
In the interest not of expediency, but of justice, i.e., reaching the right result, we ought not blind ourselves to the indications that this search was far more extensive than initially assumed. If the court intends to rely on findings regarding the scope of *699 the search, it should remand for an evidentiary hearing to determine the true extent of the GPS data examined.
Conclusion. Article 14 and the Fourth Amendment exist to inject some degree of judicial oversight into the process by which the government may conduct surveillance. See Carpenter, 138 S.Ct. at 2214. To the extent that their protections are dimmed while an individual is on probation, they must return to full brightness upon completion of the probationary term. "Interposition of a warrant requirement is designed not to shield 'wrongdoers,' but to secure a measure of privacy and a sense of personal security throughout our society." White, 401 U.S. at 790, 91 S.Ct. 1122 (Harlan, J., dissenting).
**745 Doubtless, the court's decision today will aid in the rapid resolution of future investigations, as it did in this case. So, too, would granting carte blanche for police to obtain any individual's historical location records without a demonstration of cause. Yet "[our ancestors], after consulting the lessons of history, designed our Constitution to place obstacles in the way of a too permeating police surveillance, which they seemed to think was a greater danger to a free people than the escape of some criminals from punishment." United States v. Di Re, 332 U.S. 581, 595, 68 S.Ct. 222, 92 L.Ed. 210 (1948). The accumulation and inspection of vast amounts of personal historical location data, in great excess of anything previously available to the Commonwealth, without any judicial oversight, is a sobering specter. That the court promises Big Brother will be watching only those individuals who once served probationary sentences is of little consolation.
This is not to say that the government should destroy its records after the termination of probation. On the contrary, the Commonwealth may retain those records indefinitely, and the records well may prove invaluable. Even so, there is a difference between maintaining evidence and searching it. The latter always has required a showing of probable cause and a warrant, at least for those not on probation. I would require the same here.
Hence, I would conclude that, where police engage in a search of a nonprobationer's GPS history, art. 14 and the Fourth Amendment require a warrant supported by probable cause. As police did not procure a warrant in this case, the search is presumptively unreasonable.[18] See Commonwealth v. White, 475 Mass. 583, 588, 59 N.E.3d 369 (2016). It then would be the Commonwealth's burden to "show that [it] falls within a narrow class of permissible exceptions to the warrant requirement," such as probable cause and exigent circumstances (quotation and citation omitted). Id. Because the Commonwealth has not made such a showing, I would reverse the denial of the defendant's motion to suppress.
Finally, I call upon the Legislature to revisit G. L. c. 276, § 90, the statute that permits police to examine probation records at any time, including any time after probation has ended. The statute, **746 enacted in 1880 and last amended in 1938, did not contemplate the long-term collection of GPS data. This information now forms part of a probationer's "records." After eighty years, much has changed. The Legislature *700 should consider whether this new and expansive information truly ought to remain open to government inspection, for any purpose and at any time.

In Commonwealth v. Johnson, 91 Mass. App. Ct. 296, 75 N.E.3d 51 (2017), this same defendant appealed from the denial of his motion to suppress a search of his 2013 global positioning system (GPS) data during the investigation of the 2013 break-in for which he had been arrested. The case now before the court concerns a different search, conducted around the same time, of the defendant's 2012 GPS records that were collected during a period of probationary supervision.

At the time police examined his GPS data, in the fall of 2013, the defendant had been arrested in connection with a break-in in West Roxbury. An individual's status as a pretrial detainee, however, does not permit a warrantless search of that individual's historical location information. See Commonwealth v. Broom, 474 Mass. 486, 491-492, 52 N.E.3d 81 (2016) (warrant supported by probable cause required to access defendant's historical cell site location information [CSLI] subsequent to arrest). Cf. Riley v. California, 573 U.S. 373, 401, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014) (requiring search warrant to access contents of cellular telephone while defendant was held pretrial); Shipley v. California, 395 U.S. 818, 820, 89 S.Ct. 2053, 23 L.Ed.2d 732 (1969) (requiring warrant to search defendant's house after defendant was arrested outside house). The narrow "search incident to arrest" exception, which permits some warrantless searches when detainees first enter custody, is inapplicable here. See Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964) ("Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest"). Constitutional protections are in full force during pretrial detention. Cf. Miranda v. Arizona, 384 U.S. 436, 444-445, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (defendant retains right to remain silent under Fifth Amendment to United States Constitution throughout duration of custody).

Without citation to any authority, the court insists, by ipse dixit, that the "governmental interest in detecting and determining whether a probationer had engaged in criminal activity during his probationary period does not disappear once the probationary period ends." Ante at ----, 119 N.E.3d 669. It is not clear why this would be the case; after the termination of the probationary period, probation no longer can be revoked for a violation of probation. At that point, the only interest in conducting the search would be to detect ordinary criminal wrongdoing. Although "there are instances in which we have permitted searches without individualized suspicion, '[i]n none of these cases ... did we indicate approval of a [search] whose primary purpose was to detect evidence of ordinary criminal wrongdoing.' ... That limitation is crucial." See Maryland v. King, 569 U.S. 435, 468, 133 S.Ct. 1958, 186 L.Ed.2d 1 (2013) (Scalia, J., dissenting), quoting Indianapolis v. Edmond, 531 U.S. 32, 38, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000).
In any event, the determination whether a search has occurred in the constitutional sense does not turn on the government's interest, but, rather, on the individual's expectation of privacy. See Commonwealth v. Augustine, 467 Mass. 230, 241, 4 N.E.3d 846 (2014), S.C., 470 Mass. 837, 26 N.E.3d 709 and 472 Mass. 448, 35 N.E.3d 688 (2015). See also United States v. Karo, 468 U.S. 705, 715, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) (determining search was unconstitutional while recognizing that government "is extremely interested" in its outcome).

The court suggests that, because the monitoring here was not surreptitious, the defendant forfeits his expectation of privacy. See ante at ----, 119 N.E.3d 669. I am troubled by the court's reasoning that, because the Commonwealth might have informed the defendant that he ought have no expectation of privacy -- i.e., the surveillance was not surreptitious -- his art. 14 rights thereby evaporated. See ante at ----, 119 N.E.3d 669. "Notice of the government's claimed search authority" does not itself abrogate art. 14. See 5 W.R. LaFave, Search and Seizure § 10.10(c), at 544-545 (5th ed. 2012) (criticizing role of "notice" in Federal probationer search cases). See also Samson v. California, 547 U.S. 843, 863, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006) (Stevens, J., dissenting), quoting Smith v. Maryland, 442 U.S. 735, 740 n.5, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) ("the loss of a subjective expectation of privacy would play 'no meaningful role' in analyzing the legitimacy of expectations, for example, 'if the Government were suddenly to announce on nationwide television that all homes henceforth would be subject to warrantless entry' ").

The court discounts the notion that a former probationer would recover his or her right to privacy "retroactively," "as if he [or she] had never been on probation." Ante at note 13. The court knocks down a straw man. Here, the government searched the defendant's records after probation terminated. His rights were not retroactive; they protected him at the time of the search. See note 7, infra.

The court's repeated references to the defendant as a probationer, following the termination of his period of probation, minimizes the difference between an actual probationer and a former probationer -- i.e., an ordinary citizen. See, e.g., ante at ----, 119 N.E.3d 669 ("defendant-probationer"); id. at ("probationer's GPS location data"); id. at ("the defendant -- a probationer").
These references are a stark reminder of the court's underlying view that, for those who once wore GPS devices, probation never fully ends. No matter how long a period of time elapses after the formal termination of probation, no matter how exemplary the person's conduct may be thereafter, he or she always will be branded a probationer. It is of course easy enough to call "unreasonable" this miscreant defendant's postprobation expectation of privacy in data collected during a probationary period in which he repeatedly reoffended. But the court's view encompasses as well those who, years after their successful rehabilitation, will have voluminous and intimately personal data exposed to intrusive governmental examination without probable cause or a warrant. Surely at some point society would have to recognize as reasonable the former probationer's expectation of privacy, but when might that be? After five, nineteen, or twenty-five years? After all statutes of limitation have run? The court apparently settles on "never." Believing as I -- and much of society -- do, in the possibility both of rehabilitation and of discharging one's debt to society, I conclude that people once on probation regain the rights and privileges of ordinary citizenship once their probation ends.

In the context of warrant-based searches, this plainly is not the case. Rather, a new warrant is required whenever the government seeks to reexamine digital evidence for some new investigatory purpose that exceeds the bounds of the initial search warrant. See, e.g., United States v. Walser, 275 F.3d 981, 987 (10th Cir. 2001), cert. denied, 535 U.S. 1069, 122 S.Ct. 1943, 152 L.Ed.2d 847 (2002) (no violation of Fourth Amendment where, upon inadvertently discovering child pornography on computer, investigator "immediately suspended his search and went to a magistrate for a new warrant"); United States v. Koch, U.S. Dist. Ct., No. 3:08-cr-0105-JAJ, 2009 WL 10697502 (S.D. Iowa June 1, 2009), aff'd, 625 F.3d 470 (8th Cir. 2010) (investigator "did precisely what he should have done -- stopped his search soon after he found child pornography and sought a new search warrant"). Cf. 2 W.R. LaFave, J.H. Israel, N.J. King, & O.S. Kerr, Criminal Procedure § 3.4(j) (4th ed. 2015) ("A warrant may be executed only once, and thus if a place is to be searched a second time the proper procedure is to obtain a second warrant based on an affidavit explaining why there is now probable cause notwithstanding the execution of the earlier warrant" [footnote omitted] ).

What is reasonable at one time, for one purpose, may not be reasonable at another time, for another purpose. Cf. Zittrain, Searches and Seizures in a Networked World, 119 Harv. L. Rev. F. 83, 89 (2005) (reasonableness of searching individual's electronic files "ought to hinge in part on retaining such data no longer than necessary for a specific purpose").

See, e.g., People v. Trujillo, 15 Cal. App. 5th 574, 584, 223 Cal.Rptr.3d 268 (2017) ("If [defendant] is successful at his probation, the Fourth Amendment waiver will terminate and his electronic devices will again be completely private").

"Permitting the government to make and retain copies of our private electronic [information] seems inconsistent with our traditions. The idea that the government could freely generate copies of our [data] and indefinitely retain [it] in government storage seems too Orwellian -- and downright creepy -- to be embraced as a Fourth Amendment rule." Kerr, Searches and Seizures in a Digital World, 119 Harv. L. Rev. 531, 560 (2005). See also id. at 556 ("Over time, it should become increasingly clear that the Fourth Amendment should track the information, not the physical box").

"[T]he Government cites, and the Court is aware of, no authority suggesting that simply because it has retained all originally searchable electronic materials, the Government is permitted to return to the proverbial well months or years after the relevant Warrant has expired to make another sweep for relevant evidence, armed with newly refined search criteria and novel case theories." United States v. Wey, 256 F.Supp.3d 355, 406 (S.D.N.Y. 2017).
In United States v. Ganias, 824 F.3d 199, 201, 207, 225 (2d Cir.), cert. denied, --- U.S. ----, 137 S.Ct. 569, 196 L.Ed.2d 445 (2016), for example, investigators obtained digital records from an accountant in order to investigate two of his clients. Three years later, the government sought to reexamine the records, this time targeting the accountant himself. To do so,
"the Government applied for a new search warrant and made clear in its application that it wished to run new searches over electronic materials that had been in its custody, and assumed irrelevant, for several years.... The [Second] Circuit, sitting en banc, upheld the later search ... in large measure because the Government had acted reasonably in applying for the second warrant and alerting the magistrate to the circumstances." (Emphases in original.)
Wey, 256 F.Supp.3d at 407.

"I would also consider the appropriateness of entrusting to the Executive, in the absence of any oversight from a coordinate branch, a tool so amenable to misuse, especially in light of the Fourth Amendment's goal to curb arbitrary exercises of police power to and prevent a too permeating police surveillance" (citations omitted).United States v. Jones, 565 U.S. 400, 415-17, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012) (Sotomayor, J., concurring).

The United States Court of Appeals for the First Circuit further reasoned that "the government's comparison of [the defendant's] DNA profile with other profiles in [the Combined DNA Index System database (CODIS) ] is precisely the use for which the profile was initially lawfully created and entered into CODIS." Boroian v. Mueller, 616 F.3d 60, 67 (1st Cir. 2010). Yet, here, the government's comparison of the defendant's location history with the locations of known break-ins is not the use for which the defendant's location information initially was collected. "There is a need to supervise [a probationer] both to aid in the probationer's rehabilitation and to ensure her compliance with the conditions of probation." See Commonwealth v. LaFrance, 402 Mass. 789, 792-793, 525 N.E.2d 379 (1988). Once probation was terminated, however, the location information was repurposed, a year later, as an investigative tool; this was not "precisely the use" for which it originally was intended. See Boroian, supra.

In establishing this six-hour safe harbor, we emphasized that, "in terms of reasonable expectation of privacy, the salient consideration is the length of time for which a person's CSLI is requested, not the time covered by the person's CSLI that the Commonwealth ultimately seeks to use as evidence at trial." Commonwealth v. Estabrook, 472 Mass. 852, 858-859, 38 N.E.3d 231 (2015). For example, "[i]t would violate the constitutional principles underlying our decision in Augustine to permit the Commonwealth to request and obtain without a warrant two weeks of CSLI -- or longer -- so long as the Commonwealth seeks to use evidence relating only to six hours of that CSLI". See id. at 859, 38 N.E.3d 231. The defendant is not required to show that police "mapped out months of [his] historical GPS location data in a coordinated effort to recreate a full mosaic of his personal life." See ante at ----, 119 N.E.3d 669. At the point at which the Commonwealth obtains the data, it has violated the individual's reasonable expectation of privacy.

At a minimum, these required additional examinations of the defendant's movements on May 8, 2012; May 16, 2012; June 4, 2012; July 14, 2012; and August 27, 2012. Moreover, it is not clear that police were aware of the particular times during which the break-ins occurred; if not, even further examination of the defendant's movements would have been required merely with respect to these specific incidents.

On March 19, 2015, the motion judge held an evidentiary hearing with respect to the defendant's first argument in support of his motion to suppress, that his arrest was an unlawful search and seizure. On February 10, 2016, the judge held a nonevidentiary hearing on the defendant's second argument, that the examination of his GPS records was unlawful as a warrantless search. The judge denied the motion to suppress on both grounds on March 16, 2016.

The judge's relevant findings, based on stipulated facts, were as follows:
"[Randolph police] decided to contact the Commissioner of Probation and obtain records of [the defendant's] location at various times to determine if they matched up with unsolved housebreaks on the South Shore. To that end, [Randolph police] contacted Marshfield Police Detective Kim Jones ... and suggested she contact the probation department and look into [the defendant's] whereabouts. Thereafter, the Marshfield police and two probation officers reviewed the record of [the defendant's] travels into Marshfield, Hanson and Pembroke. Once this information was developed, Jones cross-referenced it with recent break-ins in those three towns and discovered that [the defendant] was at the scene of the housebreaks at the time of the alleged breaks."
The judge made no finding with respect to the scope of the GPS data reviewed, nor does his reasoning rely on the narrowness thereof.

In denying the defendant's motion to suppress, the judge primarily relied on G. L. c. 276, § 90, which permits police to review probation records "at all times." As the court correctly notes, however, that the Legislature has sought to permit State action by statute does not mean that such action escapes constitutional review. See Commonwealth v. Blood, 400 Mass. 61, 75, 507 N.E.2d 1029 (1987) (independently reviewing statute in light of art. 14).