COMMONWEALTH vs. MARK P. SCARDAMAGLIA.

Worcester. March 5, 1991. - June 10, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Search and Seizure*, Standing to object, Affidavit, Probable cause. *Probable Cause. Constitutional Law*, Search and seizure.

Discussion of Supreme Court and other State court decisions considering whether a criminal defendant may challenge the use against him of evidence obtained in or as a result of a search and seizure that allegedly violated another's rights under the Fourth Amendment to the United States Constitution (so-called "target standing"). [377-378]

A defendant seeking suppression of evidence seized at his home during a search pursuant to a warrant could not successfully challenge the lawfulness of the search on the sole ground that the police obtained probable cause justifying the issuance of the search warrant by violating the State constitutional right of another person to be secure against unreasonable searches and seizures. [379-380]

INDICTMENTS found and returned in the Superior Court Department on January 14, 1988.

A pretrial motion to suppress evidence was heard by *Herbert F. Travers, Jr.*, J., and the cases were heard by *George C. Keady, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Geoffrey E. Spofford* for the defendant.

*Claudia R. Sullivan*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. We consider again the circumstances, if any, in which a criminal defendant may challenge the use against him of evidence obtained in or as a result of a search and seizure that allegedly violated another's rights under art. 14 of the Massachusetts Declaration of Rights. The concept has been called target standing.

After a jury-waived trial, the defendant was found guilty of trafficking in cocaine, of unlawfully possessing cocaine with intent to distribute it, and of unlawful possession of a controlled substance, all based on evidence that the police seized at his home on September 4, 1987, during a search pursuant to a warrant. The defendant's sentence was stayed pending appeal. We transferred the defendant's appeal to this court. He raises only one issue, the denial of a motion to suppress.

The defendant challenges the lawfulness of the search on the ground that the police obtained probable cause justifying the issuance of the search warrant by violating the constitutional rights of one Scott Burnham. The defendant seeks to rely on that violation, asserting that he was a target of the allegedly unlawful stop of Burnham who indicated that he had just purchased the cocaine found on him from the defendant at the defendant's home.

The motion judge had before him the affidavit of Detective Albert Bourget of the Holden police department that had been presented in support of the issuance of the warrant to search the defendant's home. He also had Burnham's affidavit describing the circumstances of Bourget's stop of Burnham's motor vehicle which resulted in Burnham turning over one-quarter ounce of cocaine to Bourget.

Bourget's affidavit also presented information provided by a confidential informant, and, on its face, provided probable cause to search the defendant's home. The informant's information alone may not have provided probable cause to search the defendant's home, and, as we shall discuss later, it may not have demonstrated probable cause to stop Burnham.

Bourget stated in his affidavit that, tipped off by a confidential informant that Burnham had just purchased cocaine from the defendant at the defendant's home on Pinecroft Avenue and as to what kind of a vehicle Burnham was driving, Bourget stopped Burnham's vehicle and advised Burnham of his Miranda rights. In response to questions, Burnham said that he had come from the home of his friend Mark on Pinecroft. Bourget then said that he had information that

Burnham had just purchased one-quarter ounce of cocaine for $200. "I further advised him that he was going to be stripped [*sic*] searched and his car was going to be searched and if he had any cocaine I would give him the chance to give it to me." Burnham turned over what Bourget said he knew was approximately one-quarter ounce of cocaine. Burnham implicitly acknowledged that "his friend Mark on Pinecroft" was the defendant.

Burnham's affidavit does not contradict the Bourget affidavit. He says that Bourget gave him Miranda warnings before his arrest and threatened him with a strip search in the bushes, if he did not turn over "certain alleged contraband that he said I was holding."

The defendant contends that (1) he was entitled, as a target of Bourget's efforts, to challenge the allegedly unconstitutional stop of Burnham; (2) the judge was obliged to disregard that portion of Bourget's affidavit setting forth information that he had obtained from Burnham; and (3) because the warrant to search his home was not issued on probable cause (once Burnham's information was removed), all the evidence seized pursuant to the warrant should have been suppressed.

Target standing has not been warmly received in the courts. In *Rakas* v. *Illinois*, 439 U.S. 128, 133-138 (1978), the Supreme Court rejected target standing under the Fourth Amendment to the United States Constitution, and later, in *United States* v. *Payner*, 447 U.S. 727 (1980), the Court rejected its recognition under the supervisory powers of the Federal courts. In refusing to adopt target standing, the Supreme Court gave three reasons: (1) because the right of privacy protected by the Fourth Amendment is a private one that may not be asserted vicariously, the remedy provided by the exclusionary rule must also be private in nature (*Rakas* v. *Illinois*, *supra* at 133-134); (2) the necessary inquiry into the motivations of law enforcement personnel as to "targeting" would create "very substantial administrative difficulties" not justified by the hypothesized increase in Fourth Amendment protection (*id.* at 136-137); and (3) the deter-

rent purposes of the exclusionary rule would adequately be served by suppression of evidence at the trial of the person whose rights were actually violated, and by the prospect of civil damages for violation of that person's constitutional or State law privacy or property rights (*id.* at 134). The Court concluded that any marginal increase in the deterrent effect of an exclusionary rule did not justify the loss to society of valid, incriminating evidence against one whose Fourth Amendment rights had not been violated. *Id.* at 137-138.

In cases in which a defendant has asserted standing under a State Constitution to challenge an unreasonable search or seizure as to someone else, courts without elaboration have declined to apply a different standing test than that which the Supreme Court established under the Federal Constitution. See *State* v. *Brown*, 113 Idaho 480, 483-484 (1987); *State* v. *Nichols*, 628 S.W.2d 732, 737 (Mo. App. 1982); *State* v. *Benjamin*, 417 N.W.2d 838, 840 (N.D. 1988). No jurisdiction has adopted target standing.[1]

[1]Louisiana has construed its uniquely phrased constitutional provision to grant universal standing. See *State* v. *Owen*, 453 So. 2d 1202, 1205 (La. 1984); *State* v. *Boyd*, 359 So. 2d· 931, 949 (La. 1978). California adopted universal standing in 1955 (*People* v. *Martin*, 45 Cal. 2d 755, 761 [1955]), but a 1982 constitutional amendment had the effect of abrogating "the 'vicarious exclusionary rule' under which a defendant had standing to object to the introduction of evidence seized in violation of the rights of a third person." *In re Lance W.*, 37 Cal. 3d 873, 879 (1985).

The violation of the rights of another person under the Fifth Amendment to the United States Constitution presents a different issue. "Due process is implicated when the government seeks a conviction through use of evidence obtained by extreme coercion or torture. The issue is whether the government's investigation methods resulted in a fundamentally unfair trial." *United States* v. *Chiavola*, 744 F.2d 1271, 1273 & 1274 (7th Cir. 1984), and cases cited.

A distinction may fairly be made between (1) the use of information received and physical evidence obtained as a result of questioning a person who was not warned of his rights and (2) the use of evidence received pursuant to an unconstitutional search and seizure. See *People* v. *Varnum*, 66 Cal. 2d 808, 812-813 (1967) ("[T]here is nothing unlawful in questioning an unwarned suspect so long as the police refrain from physically and psychologically coercive tactics condemned by due process and do not use against the suspect any evidence obtained. Accordingly, in the absence of such coercive tactics, there is no basis for excluding physical or other nonhearsay evidence acquired as a result of questioning a suspect in disre-

We have left open the question whether target standing has vitality under art. 14 of the Massachusetts Declaration of Rights. See *Commonwealth* v. *Manning*, 406 Mass. 425, 429 (1990). In the *Manning* case, we said that "[i]n the normal course, we regard the dismissal of charges against the person whose rights were primarily violated to be a sufficient deterrent to improper police conduct. The United States Supreme Court agrees with this reasoning. See *Rakas* v. *Illinois*, [439 U.S. 128], 137 [1978]; *Alderman* v. *United States*, 394 U.S. 165, 174-175 (1969)." In *Manning*, there was no demonstration of intentional police wrongdoing and no showing that, when the police violated the rights of another, they did so with the sole or even principal goal of obtaining incriminating evidence against one or more of the defendants. *Id.* at 429-430. The *Manning* case involved challenged police conduct that produced no tangible evidence against the defendants but only information that was used to justify the issuance of a search warrant. *Id.* at 426. Without accepting target standing under art. 14, we left open, on remand, the possibility that the judge might permit the defendants to renew their motions to suppress. *Id.* at 430.

Once again we need not decide whether we will accept target standing in any circumstance because this defendant in any event is not entitled to target standing. No tangible evidence seized in the allegedly unlawful stop of Burnham was introduced against the defendant. Bourget's conduct was not significantly improper. He may even have had probable cause to believe that Burnham was carrying cocaine in his vehicle and, if so, he was justified in stopping Burnham and in searching him without obtaining a warrant. At least the question of probable cause was a close one.[2]

---

gard of his Fifth and Sixth Amendment rights when such evidence is offered at the trial of another person" [footnote omitted]), appeal dismissed, cert. denied, 390 U.S. 529 (1968).

[2]Bourget's informant was shown to be reliable on the basis of information in the affidavit in support of his application for a search warrant. The basis of the informant's knowledge was arguably adequate and was reinforced in certain respects by Bourget's observations. Bourget stopped

Our reluctance to grant a wide scope to target standing, and perhaps thereby to deny the trier of fact highly relevant evidence of guilt, comes from our conclusions that (1) the administrative costs to the criminal justice system of handling such claims would be substantial and (2) the need to create a deterrent effect on police misconduct by the recognition of target standing is not great except perhaps in the case of distinctly egregious police conduct.

The motion to suppress evidence seized at the defendant's home was properly denied.

*Judgments affirmed.*

Burnham who was "driving a two tone tan Mercury," at approximately 5:45 P.M. on September 4, 1987. The informant had told Bourget that Burnham purchased one-quarter ounce of cocaine from the defendant at the defendant's home for $200 "within the past ½ hour (approx. 5:30 P.M.)" and that Burnham had just left the defendant's home in a light colored two-tone Ford. An inference that the informant saw the sale of cocaine or heard of it in an admission made by one of the participants in the sale may have been reasonably warranted.