NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11619

COMMONWEALTH  vs.  ANGEL SANTIAGO.

Hampden.     October 7, 2014. - February 4, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.

Controlled Substances.  Search and Seizure, Standing to object, Threshold police inquiry, Reasonable suspicion, Probable cause, Fruits of illegal search.  Constitutional Law, Investigatory stop, Probable cause, Reasonable suspicion, Search and seizure.  Practice, Criminal, Motion to suppress, Standing.  Threshold Police Inquiry.  Probable Cause.

Indictment found and returned in the Superior Court Department on July 19, 2012.

A pretrial motion to suppress evidence was heard by John S. Ferrara, J.

An application for leave to prosecute an interlocutory appeal was allowed by Gants, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.  The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

Katherine E. McMahon, Assistant District Attorney, for the Commonwealth.
Frederic G. Bartmon for the defendant.
Michael K. Fee, P. R. Goldstone, Alex G. Philipson, Matthew R. Segal, & Jessie J. Rossman, for Massachusetts Association of

Criminal Defense Lawyers & another, amici curiae, submitted a brief.

Murat Erkan, for Erkan & Associates, LLC, amicus curiae, submitted a brief.


BOTSFORD, J.  The defendant has been indicted on a charge of unlawful distribution of a class B controlled substance (cocaine), second or subsequent offense.  See G. L. c. 94C, § 32A (c), (d).  He was stopped and arrested by police officers at the same time and in the same location as another man, Edwin Ramos, to whom the Commonwealth alleges the defendant distributed the cocaine; Ramos was charged with possession of cocaine by complaint in the District Court.  A judge in the Superior Court allowed the defendant's motion to suppress evidence of the alleged cocaine on a theory of "target standing."  We consider here the Commonwealth's interlocutory appeal from the allowance of the motion.  We conclude that this is not an appropriate case in which to consider the adoption of target standing.  Accordingly, we reverse the order allowing the defendant's motion to suppress.

Background.  We take the relevant facts from the motion judge's findings:

> "On May 14, 2012, Springfield Police Officer William Catellier observed the defendant . . . riding a bicycle in the North End section of Springfield.  This is an area known for drug and gang activity.  Officer Catellier was on uniform patrol, working the 4 P.M. to midnight shift.  He had no interaction with the defendant that date, but noted him because he knows that drug runners sometime use

bicycles to relay drugs and money between street level dealers and buyers.

". . .

"[On] May 16, 2012, Officer Catellier was again on patrol in the North End. He again saw the defendant riding a bicycle, and undertook surveillance, following the defendant in his marked cruiser, staying a few blocks back from him. Officer Catellier did not know the defendant and the [c]ourt credits his testimony that he was unaware that [the defendant] had been arrested the previous day. Officer Catellier observed the defendant pedaling north on Main Street. He lost sight of the defendant for a short period of time -- perhaps a minute -- but then observed him again riding his bike near the corner of Main and Bancroft [S]treets. He then observed the defendant dismount the bike and walk east down Bancroft, up to a man who stepped out of the entryway to a building. [The defendant] extended his arm toward the man, later identified as Edwin Ramos, and then Ramos appeared to put something in his shirt pocket. Officer Catellier did not see a specific item in either man's hand, and did not see an exchange; he did not observe Ramos give anything to the defendant. He nonetheless suspected that he had just seen a drug transaction.

"The two men then began walking together west on Bancroft Street, back toward Main Street. Officer Catellier and his partner immediately intercepted and detained the two men. Officer Catellier told Ramos to "hold on a second," or something to that effect, and reached into Ramos's shirt pocket. He recovered a small packet of cocaine. The defendant . . . was then searched. No drugs were found on [him]. He had five dollars in his wallet.

"Both men were then arrested. Officer Catellier caused Ramos to be charged with possession of cocaine, and the defendant with distribution of that same cocaine. The Commonwealth proposes to use the cocaine seized from Ramos in the prosecution of the defendant, and it is that evidence the defendant wants suppressed."

In allowing the defendant's motion to suppress, the judge reasoned that a claim of "automatic standing" under the rule of Commonwealth v. Amendola, 406 Mass. 592, 601 (1990), was not

available to the defendant because he was not charged with a possessory offense.  See Commonwealth v. Garcia, 34 Mass. App. Ct. 386, 390 (1993).  See also Commonwealth v. Frazier, 410 Mass. 235, 245 n.6 (1991).  Nevertheless, the judge ruled that the defendant was entitled to assert standing to challenge the search and seizure of cocaine from Ramos under a theory of target standing.  He determined that the police did not have probable cause to search Ramos based on their observations of Ramos and the defendant; that there were no facts suggesting reasonable suspicion for a Terry-type stop; and that, even if there were, the search of Ramos was not justified based on any safety concerns.  See Terry v. Ohio, 392 U.S. 1, 27 (1968).  The judge also determined that the police officers conducted the search of Ramos "with the goal of obtaining incriminating evidence against both Ramos and the defendant, but principally, the defendant."  He concluded that the violation of Ramos's rights was both intentional and egregious, but that because Ramos had resolved his case with a guilty plea and a fine without going forward with his motion to suppress, the illegal police conduct would receive no sanction, and therefore there would be no deterrence of future unlawful police actions.  In the judge's view, it was necessary to recognize the defendant's standing to challenge the police seizure of the drugs from Ramos to avoid creating "a means for police to easily circumvent the

requirement of a warrant, or at leas[t] probable cause where there is some exigency, for searches of persons suspected of engaging in an unlawful exchange."

The Commonwealth thereafter filed a timely notice of appeal in the Superior Court and a timely application for leave to bring an interlocutory appeal in the county court. See Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996). A single justice allowed the Commonwealth's application and ordered the case transferred to the Appeals Court. Thereafter, we transferred the appeal to this court on our own motion.

Discussion. 1. Target standing. As articulated by the United States Supreme Court, the concept of target standing permits a criminal defendant who is the "target" of a search by police "to contest the legality of that search and object to the admission at trial of evidence obtained as a result of the search," in effect permitting the defendant "to assert that a violation of the Fourth Amendment rights of a third party entitled him to have evidence suppressed at his trial." Rakas v. Illinois, 439 U.S. 128, 132, 133 (1978). The Supreme Court has rejected target standing under the Fourth Amendment, see id. at 133-138, and it appears that few State courts have accepted the concept.[1] This court has considered target standing in

---

[1] Alaska has accepted the theory of target standing, see Waring v. State, 670 P.2d 357, 363 (Alaska 1983), as has Louisiana. See State v. Owen, 453 So. 2d 1202, 1205 (La. 1984).

relation to art. 14 of the Massachusetts Declaration of Rights in a number of cases since 1990, but to date we have not adopted it. See Commonwealth v. Manning, 406 Mass. 425, 429-430 (1990); Commonwealth v. Price, 408 Mass. 668, 673-675 (1990); Commonwealth v. Scardamaglia, 410 Mass. 375, 377-380 (1991); Commonwealth v. Waters, 420 Mass. 276, 278 (1995); Commonwealth v. Vacher, 469 Mass. 425, 435-437 (2014).

The primary purpose of the exclusionary rule is to deter future police misconduct by barring, in a current prosecution, the admission of evidence that the police have obtained in violation of rights protected by the Federal and State Constitutions. See, e.g., United States v. Calandra, 414 U.S. 338, 348 (1974); Manning, 406 Mass. at 429. But the rule requires that a balance be drawn between effectuating its deterrent purpose and permitting the fact finder to decide a criminal case based on the available relevant evidence, including "highly relevant evidence of guilt." See Scardamaglia, 410 Mass. at 380. As the Rakas case reflects, the Supreme Court has decided that the appropriate balance is

---

However, Louisiana has a provision in its State Constitution that expressly authorizes "[a]ny person adversely affected by a search or seizure conducted in violation" of its provisions to challenge the legality of a search. See id., quoting La. Const. art. 1, § 5. The Supreme Court of California adopted a rule of essentially universal standing, see People v. Martin, 45 Cal. 2d 755, 761 (1955), but a subsequent constitutional amendment superseded the rule. See Matter of Lance W., 197 Cal. Rptr. 331, 337 (Cal. 1983), citing Cal. Const. art. I, § 28 (d).

achieved by limiting to those whose own constitutional rights have been violated the right to claim the benefit of the exclusionary rule.  See Rakas, 439 U.S. at 134-135.  In considering art. 14, we have said that a somewhat broader view may be appropriate, suggesting that "[u]nconstitutional [searches of] small fish intentionally undertaken in order to catch big ones may have to be discouraged by allowing the big fish, when caught, to rely on the violation of the rights of the small fish, as to whose prosecution the police are relatively indifferent."  See Vacher, 469 Mass. at 435, quoting Manning, 406 Mass. at 429.  We also have suggested that at least where "distinctly egregious police conduct" is involved, the need to create a deterrent effect may require, or at least make appropriate, recognition of target standing.  See Scardamaglia, supra.

We reaffirm the view stated in Scardamaglia, 410 Mass. at 380, that in a case where the police engage in "distinctly egregious" conduct that constitutes a significant violation of a third party's art. 14 rights in an effort to obtain evidence against a defendant, it may be appropriate to permit the defendant to rely on the standing of the third party to challenge the police conduct.  For the reasons next discussed, however, we are not persuaded that the police in this case

engaged in conduct that would warrant the adoption of such a target standing rule.

We accept the findings of the motion judge absent clear error, but determine independently "the correctness of the judge's application of constitutional principles to the facts as found" (citation omitted). Commonwealth v. DePeiza, 449 Mass. 367, 369 (2007) (quotation omitted). Based on his factual findings, the judge concluded that the absence of probable cause was obvious. We do not share this view. The evidence, in summary, showed that Catellier, the police officer who stopped the defendant and Ramos, had worked in the North End of Springfield for ten years, knew that it was a high crime area, and had made many drug arrests there. On the day of the arrest, Catellier saw the defendant riding his bicycle again -- he had seen the defendant riding his bicycle two days earlier -- then dismount and approach Ramos as the latter stepped out of a doorway. The defendant reached his arm out toward Ramos, "and then . . . Ramos appeared to put something in his shirt pocket." Although Catellier did not see any item actually exchanged, the defendant's extended arm and Ramos's corresponding gesture in relation to his shirt pocket provided some basis for Catellier's belief that a drug transaction between the two men had just taken place. Compare Commonwealth v. Stewart, 469 Mass. 257, 259-264 (2014) (police officer watched defendant, followed by

three individuals, head down street known for drug use, huddle briefly with them in doorway, and then separate, but officer saw no exchange of any item or gestures between or among anyone in group; court concluded that based on officer's experience and knowledge of defendant's record, officer had reasonable ground to suspect drug transaction involving defendant had occurred, but not probable cause to arrest).[2]  At the least, as in Stewart, see id. at 261, there was a sufficient basis for Catellier to have reasonable suspicion of a drug transaction, and therefore to conduct a Terry-type stop of the defendant and Ramos.  See Terry, 392 U.S. at 21-22.

Assuming that a Terry-type stop was justified but that there was no probable cause for an arrest, we agree with the judge that nothing in the situation suggested that Catellier had a reason to believe either the defendant or Ramos was armed or dangerous, and thus Catellier had no justifiable reason, after stopping the two men, to reach immediately into Ramos's pocket without making any inquiry first.  See Commonwealth v. Silva, 366 Mass. 402, 406 (1974).  But in the circumstances, where the existence of probable cause was close, we question the basis for the judge's finding that Catellier "intentional[ly]" violated

_____

[2] In concluding that probable cause had not been demonstrated in Commonwealth v. Stewart, 469 Mass. 257 (2014), the court reversed the decision of the judge denying the defendant's motion to suppress.  Id. at 258-259, 265.  The evidence supporting probable cause in this case is arguably stronger than in Stewart.

Ramos's rights by reaching into his pocket and removing the small packet of cocaine; in any event, we reject the judge's conclusion that this brief, limited search of Ramos's shirt pocket constituted an "egregious" violation of his rights.

Finally, there is the question of target. The evidence before the judge -- Catellier's observation of the defendant two days earlier on May 14, 2012, and his related decision to conduct surveillance on May 16 of the two men -- provides factual support for the judge's conclusion that the defendant was Catellier's principal target when he stopped the defendant and Ramos. But the judge also concluded that Ramos was himself a target.[3] See Vacher, 469 Mass. at 436.

In sum, the facts here do not support the defendant's claim of target standing.

---

[3] Edwin Ramos was arrested at the same time as the defendant and charged with the crime of possession of cocaine. As indicated supra, the motion judge viewed the absence of suppression of the cocaine in Ramos's case and the fact that the charge against him was not dropped as providing a reason to recognize target standing in the defendant's case; he reasoned that because no sanction of the unlawful police conduct against Ramos had been imposed, there would be no deterrence of future unlawful searches. We disagree that the manner in which Ramos resolved his case offers a reason for adoption of a target standing theory in this case. The record does not offer any indication of why Ramos, with the advice of counsel, chose to resolve the case against him in the manner that he did rather than proceed with his motion to suppress. The motion judge did find that Ramos himself was a target of the police actions here, although not the primary one. The facts of this case do not justify recognizing target standing for the defendant on the ground that if it is not recognized, unlawful police conduct will go unsanctioned.

2.  Automatic standing.  Although the judge rejected the defendant's claim of automatic standing on the ground that the offense charged was not one with possession as an element, the defendant presses this point on appeal, presumably as an alternate basis to affirm the judge's suppression order.  The facts of this case -- where the evidence of distribution by the defendant is so immediately tied, in terms of time and place, with the evidence of possession by Ramos -- present a sympathetic case for accepting the defendant's argument for expansion of the doctrine of automatic standing.  But automatic standing is available in connection with crimes that have possession as an element because of the distinctly unfair position in which the defendant is put without such standing. See Amendola, 406 Mass. at 596-597, 599 (establishing automatic standing under art. 14 because without this doctrine, defendant charged with possessory offense must either assert ownership over contraband, thereby violating right against self-incrimination, or remain silent and waive right to challenge search and seizure).  See also Frazier, 410 Mass. at 241-243; Garcia, 34 Mass. App. Ct. at 391.  It is a clear rule with a distinct purpose; an expansion of automatic standing in the manner suggested by the defendant would remove the clarity of the rule and alter or at least muddy its purpose.  Accordingly, we reject the defendant's expansion argument.

3.  <u>Conclusion</u>.  The order of the Superior Court allowing the defendant's motion to suppress on a theory of target standing is reversed.  The case is remanded to the Superior Court for further proceedings consistent with this opinion.

<u>So ordered</u>.