CYPHER, J. (concurring in part and dissenting in part).
The Commonwealth concedes that the cell site location information (CSLI) tracking of Cassio Vertil's (Cassio's) cellular telephone (cell phone) was unlawful because it was not authorized by a search warrant. It argues, however, that the defendant did not have standing to challenge the unlawful tracking. I agree with the court that under *182 Commonwealth v. Rousseau, 465 Mass. 372, 382, 990 N.E.2d 543 (2013), the defendant has standing to challenge the search of Cassio's cell phone because his movements were tracked for six days.[1] Because the electronic tracking of the cell phone was **87 ongoing while police searched the defendant's apartment and there was no temporal break between the unlawful police activity and the search of the defendant's apartment, I also agree that the defendant's consent to search his apartment was not attenuated from the police's illegal conduct. See Commonwealth v. Gentile, 466 Mass. 817, 831, 2 N.E.3d 873 (2014). And I agree, albeit not based on the Massachusetts support cited by the court, that the fruits of that search -- the cocaine -- must be suppressed, even though the defendant had no reasonable expectation of privacy in the crawl space.[2] *183 See **88 Jones v. United States, 168 A.3d 703, 722-723 (D.C. 2017). See generally 6 W.R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.4, at 325-326 (5th ed. 2012) ("If the defendant does have standing with respect to the poisonous tree, that alone suffices" to challenge admissibility of its fruits).
I dissent because I think that it is time that we adopt a good faith exception to the exclusionary rule in circumstances, such as here, where at the time the police sought judicial permission to track the cell phone, they were properly complying with the law, namely, the Stored Communications Act, 18 U.S.C. § 2703(d) (2006) (SCA).
1. Reasonable expectation of privacy in the crawl space. I start by briefly highlighting that we have never articulated that any fruit, even those fruits in areas where the defendant does not have a reasonable expectation of privacy, must be suppressed if its discovery flows from an illegal search. The court concludes that the tracking of Cassio's CSLI was illegal, the defendant's consent to search his apartment did not remove the taint of the initial illegality, and therefore all evidence against the defendant must be suppressed. The court determines that we need not address whether the defendant had a reasonable expectation of privacy in the crawl space where the cocaine was found because "we have repeatedly held that persons subjected to an illegal seizure were entitled to suppress the fruits of that seizure even where the evidence was discovered in places where it is indisputable that the person in question did not have a reasonable expectation of privacy." See ante at ----, 121 N.E.3d 166 at 177. To support this proposition, the court cites three cases. See Commonwealth v. Warren, 475 Mass. 530, 533, 540, 58 N.E.3d 333 (2016) ; Commonwealth v. Rodriguez, 456 Mass. 578, 587, 925 N.E.2d 21 (2010) ;
**89 Commonwealth v. O'Laughlin, 25 Mass. App. Ct. 998, 998-999, 522 N.E.2d 10 (1988). These three cases all are inapposite to the facts and circumstances of the present case and do not fully support the broad proposition that any fruit, even those fruits in areas where the defendant does not have a reasonable expectation of privacy, must be suppressed if its discovery flows from an illegal search.[3]
*184 The court does point to Federal law, however, in support of its position. See United States v. Olivares-Rangel, 458 F.3d 1104, 1117 (10th Cir. 2006) ("While the fruit of the poisonous tree doctrine applies only when the defendant has standing regarding the Fourth Amendment violation which constitutes the poisonous tree, ... the law imposes no separate standing requirement regarding the evidence which constitutes the fruit of that poisonous tree"); United States v. Green, 275 F.3d 694, 699 (8th Cir. 2001). Historically, we have often granted greater protections to defendants under art. 14 of the Massachusetts Declaration of Rights than the protections provided under the Fourth Amendment to the United States Constitution. See Commonwealth v. Alexis, 481 Mass. 91, 98-99, 112 N.E.3d 796 (2018), and cases cited. For this reason, I am inclined to think that although we have never specifically stated it, we would come to the same conclusion as the Federal courts and declare that fruits, such as the cocaine here, should be suppressed.
2. The exclusionary rule. The Commonwealth obtained CSLI from Cassio's cell phone in 2008 pursuant to an SCA order that the Commonwealth properly sought and obtained. Under the SCA, a court may order a telephone company to produce records, including CSLI records, "if the governmental entity offers specific **90 and articulable facts showing that there are reasonable grounds to believe that the ... records or other information sought ... are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). In 2014, six years after the Commonwealth lawfully obtained the CSLI, we held that the government must secure a warrant before accessing CSLI records. Commonwealth v. Augustine, 467 Mass. 230, 254-255, 4 N.E.3d 846 (2014), S.C., 470 Mass. 837, 26 N.E.3d 709 and 472 Mass. 448, 35 N.E.3d 688 (2015). Four years after Augustine, the United States Supreme Court held that the government acquisition of CSLI records constitutes "a search within the meaning of the Fourth Amendment."[4] Carpenter v. United States, --- U.S. ----, 138 S.Ct. 2206, 2220, 201 L.Ed.2d 507 (2018).
In any consideration of police conduct, we must be cognizant that "[r]easonableness [is] the 'touchstone' " of art. 14 and the Fourth Amendment. Commonwealth v. Roland R., 448 Mass. 278, 281, 860 N.E.2d 659 (2007), quoting Commonwealth v. Gaynor, 443 Mass. 245, 256, 820 N.E.2d 233 (2005). The contours of reasonableness are drawn by a consideration of the nature of the intrusion into the privacy interest at play, Commonwealth v. Feyenord, 445 Mass. 72, 86, 833 N.E.2d 590 (2005) (Greaney, *185 J., concurring), cert. denied, 546 U.S. 1187, 126 S.Ct. 1369, 164 L.Ed.2d 77 (2006), and the nature of the law enforcement interest at stake. "The primary purpose of the exclusionary rule is to deter future police misconduct by barring, in a current prosecution, the admission of evidence that the police have obtained in violation of rights protected by the Federal and State Constitutions." Commonwealth v. Santiago, 470 Mass. 574, 578, 24 N.E.3d 560 (2015). "[W]here 'the exclusionary rule does not result in appreciable deterrence, then, clearly, its use ... is unwarranted.' " Commonwealth v. Wilkerson, 436 Mass. 137, 142, 763 N.E.2d 508 (2002), quoting United States v. Janis, 428 U.S. 433, 454, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). Another consideration is the protection of judicial integrity through the dissociation of the courts from unlawful conduct. See Commonwealth v. Ford, 394 Mass. 421, 433, 476 N.E.2d 560 (1985) (Lynch, J., dissenting). Where those purposes are not furthered, rigid adherence to a rule of exclusion can only frustrate the public interest in the admission of evidence of **91 criminal activity. Commonwealth v. Brown, 456 Mass. 708, 715, 925 N.E.2d 845 (2010).
The Supreme Court recognizes a "good faith" exception to the exclusionary rule where the government "act[s] with an objectively reasonable good-faith belief that their conduct is lawful" (quotation and citation omitted). Davis v. United States, 564 U.S. 229, 238, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). We have not adopted the good faith exception to the exclusionary rule, yet we have never specifically articulated why art. 14 might prohibit us from doing so. Instead, where the good faith exception has been addressed and not reflexively dismissed, our cases have focused on whether the violations are substantial and prejudicial. See ante at ----, 121 N.E.3d 166, 181. See Commonwealth v. Hernandez, 456 Mass. 528, 533, 924 N.E.2d 709 (2010) ; Commonwealth v. Rutkowski, 406 Mass. 673, 677, 550 N.E.2d 362 (1990). We have said that "the mere fact that an unlawful search and seizure has occurred should not automatically result in the exclusion of any illegally seized evidence." Commonwealth v. Gomes, 408 Mass. 43, 46, 556 N.E.2d 100 (1990). See, e.g., Commonwealth v. Holley, 478 Mass. 508, 525, 87 N.E.3d 77 (2017) (warrant did not comply with particularity requirement or limit scope of search, but defendant "suffered no prejudice"); Hernandez, supra ; Commonwealth v. Beldotti, 409 Mass. 553, 559, 567 N.E.2d 1219 (1991). Using the standard that has been articulated to determine whether to exclude evidence obtained as a result of an illegal search or seizure, we balance (1) the degree to which the violation undermined the principles underlying the governing rule of law, and (2) the extent to which exclusion will tend to deter such violations from being repeated in the future. Gomes, 408 Mass. at 46, 556 N.E.2d 100. See Hernandez, 456 Mass. at 532, 924 N.E.2d 709 (exclusion is deterrent to abuse of official power based on application of State legal principles); Wilkerson, 436 Mass. at 142, 763 N.E.2d 508 ; Commonwealth v. Benoit, 382 Mass. 210, 216, 415 N.E.2d 818 (1981), S.C., 389 Mass. 411, 451 N.E.2d 101 (1983) (exceptions to strict application of exclusionary rule are justified when deterrence rationale is outweighed by competing societal interest in convicting guilty). Where we have allowed the introduction at trial of evidence that was obtained through an illegality, it has usually turned on whether there was a technical error in procuring a warrant, not whether the police conduct was legal at the time the warrant was procured. See Holley, 478 Mass. at 525-526, 87 N.E.3d 77 ; Rutkowski, 406 Mass. at 677, 550 N.E.2d 362.
With the touchstone of art. 14 in mind, I think that it is time we adopt the good *186 faith exception to the exclusionary rule in circumstances, such as here, where the police had an objectively **92 reasonable good faith belief that their conduct was lawful at the time they applied for the SCA order. See Illinois v. Krull, 480 U.S. 340, 350, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) ("Penalizing the officer for the [legislature's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations" [citation omitted] ).
Here, police fully complied with the terms of § 2703(d), which authorized the release of CSLI. Police acted in good faith in seeking the SCA order and in relying on what they (and the judge issuing the order) reasonably understood was the existing law at the time. In 2008, no precedent -- whether Federal or in the Commonwealth -- indicated that the use of § 2703(d) to obtain CSLI was unconstitutional. There was nothing to suggest to the government that it reasonably could not rely on the statutory scheme set forth in § 2703(d). Therefore, I would hold that the fact that Augustine subsequently invalidated any means of obtaining CSLI without probable cause and a warrant does not require suppression of CSLI obtained six years earlier in 2008. See Brown, 456 Mass. at 715, 925 N.E.2d 845 ("Judicial integrity ... is hardly threatened when evidence properly obtained under Federal law, in a federally run investigation, is admitted as evidence in State courts. To apply the exclusionary rule in these circumstances ... would plainly frustrate the public interest disproportionately to any incremental protection it might afford"). See also United States v. Adkinson, 916 F.3d 605, 611 (7th Cir. 2019) ; United States v. Goldstein, 914 F.3d 200, 203 (3d Cir. 2019) (even though collection of evidence violated Fourth Amendment, prosecutors relied on objectively good faith belief that obtaining defendant's data was legal under § 2703 [d] ); United States v. Curtis, 901 F.3d 846, 849 (7th Cir. 2018) ("though it is now established that the Fourth Amendment requires a warrant for the type of cell-phone data present here, exclusion of that information was not required because it was collected in good faith"); United States v. Zodhiates, 901 F.3d 137, 143 (2d Cir. 2018), cert. denied, --- U.S. ----, 139 S.Ct. 1273, 203 L.Ed.2d 296 (2019) (good faith exception to exclusionary rule applies to CSLI, obtained prior to Supreme Court's decision in Carpenter, pursuant to § 2703 [d] because search was made in "objectively reasonable reliance on appellate precedent existing at the time of the search"). See generally Commonwealth v. Gonzalez, 90 Mass. App. Ct. 100, 106, 56 N.E.3d 871 (2016).
Because the SCA order was sought and issued on an informed understanding of State constitutional principles in place in 2008 **93 and because there is no suggestion of misconduct by any agent of the Commonwealth, the suppression of the evidence obtained pursuant to the order would disserve the enduring deterrent rationale of the exclusionary rule. See Hernandez, 456 Mass. at 532, 924 N.E.2d 709 ; Gomes, 408 Mass. at 46, 556 N.E.2d 100. Accordingly, even if obtained in violation of art. 14, the CSLI at issue should be admitted.[5]

In Commonwealth v. Rousseau, 465 Mass. 372, 382, 990 N.E.2d 543 (2013), we concluded that "under art. 14 [of the Massachusetts Declaration of Rights], a person may reasonably expect not to be subjected to extended [global positioning system] electronic surveillance by the government, targeted at his movements, without judicial oversight and a showing of probable cause." We did not decide how broadly such an expectation might reach and to what extent it may be protected. Id. However, the fact that police monitored Rousseau over a thirty-one-day period was sufficient to establish that he had standing to challenge the validity of the warrant.
Here, the defendant was targeted for substantially less time -- six days -- than the defendant in Rousseau. The court does not recognize any distinction between the two time frames. I too think it is difficult to do so without creating an arbitrary time frame. The length of time must be considered on a case-by-case basis.
I also think it is important to emphasize that while the passenger here and in Rousseau were both "targets" of the tracking, we have not yet adopted "target" standing in Massachusetts. See Commonwealth v. Santiago, 470 Mass. 574, 577-578, 24 N.E.3d 560 (2015). However, we have indicated that "[u]nconstitutional [searches of] small fish intentionally undertaken in order to catch big ones may have to be discouraged by allowing the big fish, when caught, to rely on the violation of the rights of the small fish, as to whose prosecution the police are relatively indifferent" (citation omitted). Id. That is clearly not the case here, or in Rousseau. It is important to understand the distinction between "target standing," which permits a criminal defendant who is the "target" of a search, i.e., the big fish, to contest the legality of that search and object to the admission at trial of evidence obtained as a result of the search, see index="264" url="https://cite.case.law/citations/?q=24%20N.E.3d%20560">id., and the standing recognized in Rousseau and by the court here, which emphasizes that a person who is specifically tracked for an extended period of time has standing to contest that search. I would not necessarily conclude that an incidental passenger in a car that was being tracked would have standing to challenge a search.

The court does not reach the issue of whether the defendant had a reasonable expectation of privacy in the crawl space where the cocaine was discovered. See ante at note 7. The court states, "[W]e do not consider whether the Appeals Court's legal analysis was consistent with our opinion in Commonwealth v. Leslie, 477 Mass. 48, 54, 76 N.E.3d 978 (2017), where we held that 'in cases involving a search in a multifamily home, the validity of the search [does not turn] on the defendant's exclusive control or expectation of privacy in the area searched' " (emphasis added). Ante at note 7. Leslie, supra, instructs that we apply the same curtilage analysis to multiunit homes as we do to single-family homes, where in the past we have held that a tenant does not have a reasonable expectation of privacy in a "common area" in an apartment building, see Commonwealth v. Thomas, 358 Mass. 771, 774-775, 267 N.E.2d 489 (1971).
If I were not constrained to conclude that the cocaine must be suppressed as fruit of the illegal search of the cell phone, and if I were to decide the crawl space issue, I would conclude that the defendant did not have a reasonable expectation of privacy in the crawl space. Applying the four-factor test introduced in United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), which we adopted in Leslie, 477 Mass. at 55, 76 N.E.3d 978, I would conclude that the crawl space was not "so intimately tied to the [defendant's apartment] itself that it should be placed under the [apartment's] 'umbrella' of Fourth Amendment protection." Id., quoting Dunn, supra. See Commonwealth v. Fernandez, 458 Mass. 137, 142, 934 N.E.2d 810 (2010) ("In the context of a curtilage determination, we undertake our independent review cognizant that there is no finely tuned formula that demarcates the curtilage in a given case" [quotation and citation omitted] ).
I do not read the Leslie decision as granting multiunit apartment buildings the same broad protection as a single-family home. Although the court in Leslie expanded the protection that may be given curtilage in such circumstances, the facts must still be analyzed. Otherwise, an overly broad interpretation may lead to results that are inconsistent with the over-all framework of our search and seizure jurisprudence. For example, the broadest reading of Leslie would require us to conclude that a tenant on the first-floor apartment has the same constitutional protections in his own apartment as he does in a separate apartment on the second floor. Although the crawl space is enclosed within the four walls of the apartment building, it does not necessarily warrant the same protections as the areas enclosed inside the four walls of a single-family home. The Dunn factors were applied in Leslie. I would apply them here.

In Commonwealth v. Rodriguez, 456 Mass. 578, 587, 925 N.E.2d 21 (2010), we stated that if a defendant drops contraband on the ground in a public park after he was stopped in the constitutional sense, the drugs could be suppressed as fruits of an unlawful seizure if the stop was not supported by reasonable suspicion. Both Commonwealth v. Warren, 475 Mass. 530, 533, 58 N.E.3d 333 (2016), and Commonwealth v. O'Laughlin, 25 Mass. App. Ct. 998, 999, 522 N.E.2d 10 (1988), are cases in which the defendant discarded contraband while fleeing from police. In those cases, we suppressed the evidence because police did not have reasonable suspicion to stop the defendant. See Warren, supra at 540, 58 N.E.3d 333 ; O'Laughlin, supra at 999-1000, 522 N.E.2d 10. The results in these cases flow from our decision in Commonwealth v. Stoute, 422 Mass. 782, 789, 665 N.E.2d 93 (1996), in which we held that art. 14 provides more protection than the Fourth Amendment to the United States Constitution in defining the moment at which a person's personal liberty has been significantly restrained by the police, so that he or she may be said to have been seized within the meaning of art. 14. Contrast California v. Hodari D., 499 U.S. 621, 629, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Thus, we did not use an attenuation framework in these cases.

In Commonwealth v. Augustine, 467 Mass. 230, 232, 254-255, 4 N.E.3d 846 (2014), S.C., 470 Mass. 837, 26 N.E.3d 709 and 472 Mass. 448, 35 N.E.3d 688 (2015), because there was no Federal or Massachusetts decision regarding whether obtaining CSLI data was a search in the constitutional sense, we remanded the case to the Superior Court to determine whether the application pursuant to 18 U.S.C. § 2703(d) established probable cause. Here, I agree with the Appeals Court and conclude that a remand is not necessary because the application in 2008 cannot establish probable cause.

The court does not reach the issue of the good faith exception on the ground that the issue was not raised. I think the issue was adequately raised by the Commonwealth when it discussed attenuation. The court notes that "the good faith exception to the exclusionary rule is substantively different from the consideration of police misconduct in determining attenuation." See ante at note 9. I disagree. While police misconduct is but one factor in our attenuation analysis, that factor is sufficiently intertwined, in this case, with the question whether the police acted in good faith that I do not see a meaningful distinction. See Davis v. United States, 564 U.S. 229, 238, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) (good faith exception to exclusionary rule applies where police "act with an objectively reasonable good-faith belief that their conduct is lawful"). That being said, I recognize that the two concepts are not one and the same. I agree with the court that the defendant's consent was not attenuated from the search of his cell phone, mainly because the search was ongoing while the police approached the defendant's door. However, I reiterate that whenever we discuss the exclusionary rule, whether it be in the purview of attenuation or good faith, the touchstone of art. 14 is reasonableness. The Commonwealth argued that the police acted in good faith under Commonwealth v. Damiano, 444 Mass. 444, 455, 828 N.E.2d 510 (2005). Keeping in mind the primary purpose of the exclusionary rule -- to deter police misconduct -- I would give the Commonwealth the benefit in applying that reasoning to the overarching theme of the good faith exception. See Santiago, 470 Mass. at 578, 24 N.E.3d 560.