SUPERIOR COURT 
 
 COMMONWEALTH vs. ONE HUNDRED THOUSAND ONE HUNDRED DOLLARS ($100,100) and CHRISTOPHER PARSONS

 
 Docket:
 2077CV01245
 
 
 Dates:
 February 8, 2022
 
 
 Present:
 Jeffrey T. Karp Associate Justice, Superior Court
 
 
 County:
 
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANT/INTERVENOR'S MOTION TO SUPPRESS EVIDENCE SEIZED WITH AN INVALID/ILLEGAL SEARCH WARRANT (Paper No. 8)
 
 

             This is a civil asset forfeiture action brought by the Commonwealth pursuant to G.L. c. 94C, § 47. Defendant Christopher Parsons (“Christopher”)[1] has moved to suppress evidence seized by the police on November 12, 2020, pursuant to a search warrant at his home located at 438 Howe St. in Methuen (“House”).
            On January 31, 2022, the Court conducted a nonevidentiary hearing on Defendant/Intervenor's Motion To Suppress Evidence Seized With An Invalid/Illegal Search Warrant (Paper No. 8) (“Motion”).
            As is fully explained below, after thorough consideration of the affidavit in support of the search warrant (“Affidavit”), the other search warrant documents, the parties’
submissions, and arguments of counsel, the Motion is ALLOWED.
 
-------------------------------------
 
[1] Because the defendant shares a last name with the target of the search warrant, Braeden Parsons, the Court will refer them by their first names.
 
                                                            -1-
 
FINDINGS OF FACT
            The Court makes the following findings from the facts set forth in the search warrant, the application for the search warrant, and the Affidavit, and reasonable inferences drawn therefrom.[2]
            The affiant, Trooper Jamie P. Vitale of the Massachusetts State Police (“MSP”), is a highly experienced and well-trained street-level drug distribution and drug trafficking organization (“DTO”) investigator. At the time of the events at issue, he was a member of a United States Drug Enforcement Administration (“DEA”) task force that had been investigating an international DTO operating in Massachusetts and elsewhere.[3]
            The House is a single family residence on what appears to be a tree-lined street in a residential neighborhood in Methuen.
            In November 2020, an unidentified confidential informant (“CI”) identified Braeden Parsons (“Braeden”) “as a large-scale marijuana products customer and distributor based in Massachusetts.” Affidavit, ¶ 14.
            At the direction of investigators, the CI began communicating with Braeden via social media platforms and encrypted cell phone applications. Id. at ¶ 15. The CI’s communications on one of the social media platforms, Instagram, was with an account with the username “Braeden_parsons.” Id.
            During the communications, Braeden agreed to purchase 55 pounds of tetrahydrocannabinol (“THC”) wax (referred to by its street name, “shatter”) for
$132,000. I d. at ¶ 15. The CI told Braeden that the drugs would be shipped from
 
-------------------------------------
 
[2] The Court sets forth additional Findings of Fact in the Conclusions of Law section, infra.
 
[3] At the hearing, Christopher conceded that the affiant is an experienced narcotics investigator.
 
                                                            -2-
 
California and would arrive in New York on November 12, 2020, and that a New York associate would contact Braeden directly to arrange the delivery of the drugs. Id.[4]
            On November 11, 2020, an undercover officer contacted Braeden at a certain telephone number via text message and reported that the drugs had arrived in New York (i.e., “I have the 55” pounds).[5] I d. at ¶ 16. Braeden agreed to meet the undercover officer in the area of Amsterdam, New York on November 12, 2020, to purchase the drugs. Id.
            Using databases, including a Registry of Motor Vehicles (“RMV”) database, officers learned that Braeden’s primary address was 438 Howe St. in Methuen (i.e., the House). I d. at ¶ 17. They further learned that a gray 2019 Audi S4 bearing certain
Massachusetts plates (“Audi”) was registered to Braeden at that address. Id.
            On November 11, 2020, officers observed the Audi parked in the driveway at the House. I d.
            On the morning of November 12, 2020, the date agreed upon by Braeden to consummate the purchase of drugs, officers observed Braeden exit the House carrying a white bag that contained a large unknown item (i.e., approximately 1’ by 1.5’). I d. at ¶ 18. Braeden put the bag in the trunk of the Audi, entered the Audi, and drove away. I d. Officers followed the Audi to “a known drug associate’s residence” in
 
-------------------------------------
 
[4] The identification of Braeden as a marijuana distributor and this series of communications appear to be the CI’s only involvement in the investigation.
 
[5] The Affidavit is silent regarding how investigators obtained Braeden’s cellphone number, but a reasonable inference may be drawn that the CI provided it. Braeden used the same cellphone number for all communications with the undercover officer. The cellphone number was associated with a pre-paid Verizon Wireless account, which listed no subscriber information. Id. at ¶ 17.
 
                                                            -3-
 
Methuen. I d. Braeden spoke with the associate in the driveway at that location without exchanging anything and then drove away in the Audi. Id.
            Officers followed the Audi, which was apparently occupied solely by Braeden, from Methuen to Amsterdam, New York. Id. Braeden did not meet with anyone during the trip.
            Braeden exchanged text messages with the undercover officer during the trip to New York. Id. Braeden requested a location to meet with the undercover officer and the officer provided a specific location in Hagaman, New York. Id. Braeden replied that he expected to arrive at the location in fifteen minutes. Id.
            Shortly before arriving at the agreed upon location, a police officer observed Braeden commit several motor vehicle violations and stopped the Audi. Id. Braeden provided the officer with a Massachusetts driver’s license bearing his name and address, i.e., Braeden “was positively identified via [the] license.” Id. He told the officer that he was going to visit his grandmother in New York, although he did not know the address. Id. While waiting for the officer to check his license status in the police cruiser, Braeden sent a text message to the undercover officer telling him that he got pulled over. I d.
            During the traffic stop, investigators searched the Audi. They discovered a white pillowcase containing a black leather backpack in the trunk. Id. The backpack contained a large (unspecified) amount of cash, packaged in 14 individual bundles wrapped in rubber bands.[6] I d.
 
-------------------------------------
 
[6] The Affidavit is silent regarding the amount of the cash and whether the investigators seized it.
 
                                                            -4-
 
            The search warrant, which was issued on November 12, 2020, authorized a search of the House for, inter alia, cash (“[m]onetary instruments”) derived from, or used to promote, drug sales; bank statements; records, documents, ledgers, etc., regarding drug distribution activity, and computers, mobile phones, etc., that may contain said records; and, records and items identifying the occupants of the House. The application for the search warrant did not request permission to search for drugs or even drug paraphernalia (and the search warrant did not authorize such a search).
            Upon execution of the search warrant, the police seized $100,100 in cash, “several hundred pounds of THC edibles/wax/oils,“ a large duffel bag containing marijuana, a bag containing TXC wax, and a small bag containing marijuana.
CONCLUSIONS OF LAW
            Christopher seeks the suppression of all evidence seized by police at the House pursuant to the search warrant. He argues that the information in the Affidavit fails to establish probable cause to believe that drug-distribution proceeds and records would be found at the House, i.e., that the Affidavit fails to establish a sufficient timely nexus between alleged drug trafficking activity and the place to be searched. The Court agrees.
            I. T HE LEGAL FRAMEWORK
                        A. T he Exclusionary Rule Applies In This Action
            As a threshold matter, citing Commonwealth v. One 2004 Audi Sedan Auto., 456 Mass. 34 (2010), the Commonwealth challenges the long-recognized principle in Massachusetts that the exclusionary rule is applicable in civil asset forfeiture cases. See Commonwealth v. One 1985 Ford Thunderbird Auto., 416 Mass. 603, 604 n.1 (1993)
 
                                                            -5-
 
(citing Commonwealth v. Nine Hundred & Ninety-two Dollars, 383 Mass. 764, 765 n.2 (1981)).[7]
            The Commonwealth argues that under One 2004 Audi Sedan Auto., the proper way for Christopher to contest the legality of the seizure of the res is via a motion to dismiss or to vacate the order of preliminary seizure. See G.L. c. 94C, § 47(f)(1) (authorizing an ex parte preliminary order to take custody of property pending final adjudication of the forfeiture proceeding upon showing of probable cause).
            In One 2004 Audi Sedan Auto., the SJC observed that, “[i]n the criminal context, when property has been seized, the defendant may bring a motion to suppress and, if the property is found to have been unlawfully seized, may move for its return.” Id. at 45 (citation omitted). While recognizing this remedy in the criminal context, and without citing or discussing the aforementioned cases of One 1985 Ford Thunderbird Auto. or N ine Hundred & Ninety-two Dollars, the SJC:
[C]reate[d] a comparable remedy for civil forfeiture claimants whose property has been seized pursuant to an ex parte order. Prior to trial, a claimant may file a motion and memorandum, supported by affidavits, to vacate the order of preliminary seizure by (1) demonstrating that the evidence in the Commonwealth’s affidavits in support of its ex parte motion, even if true, was legally insufficient to justify a finding of probable cause; (2) showing that material facts in the Commonwealth’s affidavits were inaccurate; or (3) providing additional information that, had it been before the judge at the time of the Commonwealth’s motion, would have demonstrated a lack of probable cause to seize.
Id. at 45 – 46 (emphasis added).
 
-------------------------------------
 
[7] In Nine Hundred & Ninety-two Dollars, the Commonwealth conceded “that the exclusionary rule is applicable to a forfeiture proceeding, a ‘quasi-criminal’ proceeding, in the same way it is applicable in a criminal proceeding.” 383 Mass. at 765 n.2 (citation omitted). The SJC observed that it “ha[s] recognized the applicability of an exclusionary rule, as a matter of Massachusetts law, in a civil action where the government sought to rely on illegally obtained evidence to support the discharge of a public employee.” Id. (citation omitted).
 
                                                            -6-
 
            In the Court’s view, the SJC in One 2004 Audi Sedan Auto. did not overrule the longstanding application of the exclusionary rule in civil asset forfeiture proceedings in Massachusetts. Rather, it simply pointed out another remedy available to a claimant under G.L. c. 94C, § 47. To be sure, given that “[t]he primary purpose of the exclusionary rule is to deter future police misconduct by barring, in a current prosecution, the admission of evidence that the police have obtained in violation of rights protected by the Federal and State Constitutions,” Commonwealth v. Santiago, 470 Mass. 574, 578 (2015) (citations omitted), it would be nonsensical to ignore the exclusionary rule in an asset forfeiture proceeding in which the police will directly benefit from the forfeiture.[8] S ee G.L. c. 94C, § 47(d) (“The final order of the court shall provide that said moneys and the proceeds of any such sale shall be distributed equally between the prosecuting district attorney or attorney general and the city, town or state police department involved in the seizure.”).
            B. G eneral Principles Governing A Challenge To A Seizure Via A Search Warrant
            It is axiomatic that “[t]he Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights require that a search warrant may issue only upon a showing of probable cause.” Commonwealth v. Morin, 478 Mass. 415, 425 (2017) (citation omitted). “[I]n general, art. 14 provides ‘more substantive protection to criminal defendants than does the Fourth Amendment in the determination of probable cause.’” Commonwealth v. Guastucci, 486 Mass. 22, 33 n.6 (2020) (citation omitted). Moreover, “G.L. c. 276, § 2B, is a statutory prohibition against the admission of
 
-------------------------------------
 
[8] The United States Supreme Court “ha[s] repeatedly held” that the exclusionary “rule’s sole purpose . . . is to deter future Fourth Amendment violations.” Davis v. United States, 564 U.S. 229, 236 - 237 (2011) (citations omitted).
 
                                                            -7-
 
evidence without probable cause.” Commonwealth v. Nelson, 460 Mass. 564, 568 (2011) (citation omitted).
            As the SJC has observed, “[t]he general principles governing [a court’s] consideration of a claim that probable cause to support a search warrant is lacking are well known.” C ommonwealth v. Keown, 478 Mass. 232, 237 (2017). “The probable cause inquiry is limited to the ‘four corners of the affidavit,’ . . . , but a [reviewing court] may also consider ‘[a]ll reasonable inferences which may be drawn from the information in the affidavit.’” Id. at 237 - 238 (citations omitted).
            “[T]he probable cause inquiry is ‘not a high bar,’ . . . and . . . ‘does not require definitive proof of criminal activity.’” Guastucci, 486 Mass. at 26 (citations omitted). Furthermore, “[a] magistrate's determination of probable cause is accorded ‘considerable deference.’” Commonwealth v. Holley, 478 Mass. 508, 521 (2017) (citation omitted).
            In addition, “[t]here must be probable cause to conclude not only that an individual committed a crime, but also that there is a nexus between the crime and the items sought, and the location to be searched.” Commonwealth v. Alexis, 481 Mass. 91, 102 (2018); see also Commonwealth v. Matias, 440 Mass. 787, 794 (2004) (“probable cause to believe evidence of criminal activity will be found in a particular place must be demonstrated by a ‘nexus’ between the crime alleged and the place to be searched.”) (citation omitted).
            In the context of a challenge to the sufficiency of the nexus to search a particular location, “[p]robable cause means a ‘substantial basis’ to conclude that ‘the items sought are related to the criminal activity under investigation, and that they reasonably
 
                                                            -8-
 
may be expected to be located in the place to be searched at the time the search warrant issues.’” Alexis, 481 Mass. at 102 (quotation and citations omitted). “A ‘substantial basis’ means no more and no less than that ‘[a]n affidavit must contain enough information for an issuing magistrate to determine that [a nexus exists].’” Id. (citation omitted).[9]
B. THE AFFIDAVIT FAILS TO ESTABLISH PROBABLE CAUSE TO BELIEVE THE ITEMS SOUGHT MAY BE FOUND AT THE HOUSE
            With the above principles and the aforementioned nexus argument advanced by Christopher in mind, the Court must determine whether the Affidavit provides a substantial basis to believe that drug-distribution proceeds and records reasonably may have been located in the House on November 12, 2020.
            There is no dispute that the trafficking of 55 lbs. of THC wax is illegal in Massachusetts, G.L. c. 94C, § 32E(a), as is the “bringing into the [C]ommonwealth” of 50 lbs. or more of marijuana,[10] id., and conspiring to do so. See G.L. c. 94C, § 40 (conspiracy to violate the Controlled Substances Act). Moreover, there is little dispute that the Affidavit sufficiently established that Braeden lived at the House. With this in mind, the Commonwealth points to the following evidence in the Affidavit and argues it
 
-------------------------------------
 
[9] Christopher’s standing to seek suppression here is not in dispute. In his affidavit filed in support of the Motion, Christopher avers that he has been residing at the House for five years, the cash at issue was seized therein from his safe, and that he was present for the search. See Commonwealth v. Delgado-Rivera, 487 Mass. 551, 555 - 556 (2021) (“For purposes of art. 14, ‘[a] defendant has standing [to challenge a government search] either if [ ]he has a possessory interest in the place searched or in the property seized or if [ ]he was present when the search occurred.’”) (citations omitted).
 
[10] G.L. c. 94C, § 32E(a) criminalizes the trafficking and importation of, inter alia, 50 or more pounds of marihuana and the resin, derivative or salt thereof. G.L. c. 94C, § 1. Tetrahydrocannabinol is a derivative of marihuana. See e.g., G.L. c. 94G, § 1 (defining “marihuana” to include “every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin including tetrahydrocannabinol.”).
 
                                                            -9-
 
provides a sufficient nexus between Braeden’s alleged drug trafficking business and the House: (a) Braeden was a large scale marijuana trafficker (according to the CI); (b) Braeden exited the House with a large (unspecified) amount of cash and travelled from the House to purchase a large quantity of THC wax; (c) Braeden, “like most people,” would have personal papers at his residence, the House; and, (d) the police had no information to believe that Braeden used another location for his trafficking business.
            The Court is mindful that “the probable cause inquiry is ‘not a high bar,’” Guastucci, 486 Mass. at 26 (citation omitted). Furthermore, the Court recognizes that “[t]he connection between the items to be seized and the place to be searched does not have to be based on direct observations; it may be found by looking at the type of crime, nature of the items, the suspect's opportunity to conceal items, and inferences as to where the items are likely to be hidden.” Commonwealth v. Luthy, 69 Mass. App. Ct. 102, 105 (2007) (“That a person would keep a handgun that was not vulnerable to ballistic testing in his or her home is not a remarkable proposition.”) (citations omitted). Nevertheless, the Court rules the “[t]he [A]ffidavit here did not contain sufficient particularized information to justify a search of the [House] for drug-related records [and] proceeds ” Commonwealth v. Perkins, 478 Mass. 97, 109 (2017).
            The CI did not provide any information that tied Braeden’s trafficking business to the House. Also, the absence of information learned by the police to believe Braeden used another location requires the exercise of circular reasoning (i.e., the “lack” of evidence of a second drug distribution business location was “developed” during an investigation that lasted mere days, and that relied on databases and only one meaningful instance of police surveillance). In essence, the nexus evidence in the
 
                                                            -10-
 
Affidavit amounted to a single instance when Braeden conceivably stored cash at the House that he used to further his drug trafficking business and the affiant’s experience when executing search warrants “that monetary instruments and personal papers are routinely found in the home of the occupying party.“ Affidavit, ¶ 20.
            The Court has not found, and the Commonwealth has not cited, any decisions of our appellate courts that have ruled that a defendant making a single trip from his residence to purchase (or, even sell) drugs is sufficient evidence to establish probable cause to believe drug proceeds and/or records would be at the residence. In fact, reported decisions seem to require more evidence. See e.g., Commonwealth v. Andre-Fields, 98 Mass. App. Ct. 475, 483 (2020) (“Based on the information that established that [the defendant] was a regular supplier of drugs with a substantial connection to the apartment from which he departed on at least two occasions to sell drugs to the CI, it was reasonable to infer that evidence related to the distribution of drugs[, i.e., records,] would be found in the apartment.”) (emphasis added); Commonwealth v. Lima, 80 Mass. App. Ct. 114, 115 (2011) (“although the affidavit in support of the search warrant failed to establish probable cause to believe that cocaine was in the [defendant’s] residence, the affidavit did establish probable cause to believe that related proceeds and records were located in that apartment” in case where officers performed two controlled buys at defendant’s stash location) (emphasis added); Commonwealth v. Rodriguez, 75 Mass. App. Ct. 290, 299 (2009) (finding “probable cause to believe that police would find records of [defendant’s] cocaine distribution business” and telephone records for telephone used by the defendant in case where police observed defendant drive from/to his home to/from two controlled buys) (emphasis added);
 
                                                            -11-
 
Commonwealth v. Santiago, 66 Mass. App. Ct. 515, 522 (2006) (“Once it was established that the defendant was operating a drug business that included [his residence], little, if anything more, needed to be added in the affidavit to justify searching for ‘records, ledgers, or proceeds.’”) (emphasis added).
            Finally, although they involved searches for drugs and not records, the cases of Commonwealth v. Medina, 453 Mass. 1011 (2009), and Commonwealth v. Smith, 57 Mass. App. Ct. 907 (2003), are instructive. In Medina, the SJC ruled that evidence that the defendant drove from his apartment to a prearranged location where he sold drugs to a CI and then drove back to his apartment after the sale was insufficient to establish probable cause to believe drugs would be found at the defendant’s apartment. Medina, 453 Mass. at 1011.
            In Smith, the defendant drove to his home after a CI conducted a control buy of drugs from him. Smith, 57 Mass. App. Ct. at 907.  Further, an undercover officer twice bought drugs from the defendant and the defendant drove from his home to one of those transactions. Id. at 907 - 908. Like the CI in this case, the CI in Smith did not claim that the defendant sold drugs from, or stored drugs at, his home. Id. at 908. In holding that the affidavit in support of the search warrant failed to provide sufficient evidence of a nexus between the defendant’s drug dealing and his home, the Appeals Court ruled that “the observations by the police of the defendant driving, either to or from his home, without more, established no connection between his home and the controlled buys.” Id. 909.
 
                                                            -12-
 
            In sum, the Court recognizes that “‘[a] warrant application need not establish to a certainty that the items to be seized will be found in the specified location.’” Andre-Fields, 98 Mass. App. Ct. at 483 (citation omitted). Nevertheless, cognizant of the well-known proviso that, “[o]f all the [constitutionally] protected locations, ‘the home is first among equals,’” Commonwealth v. Mora, 485 Mass. 360, 370 (2020) (citation omitted), the Court rules that the totality of the circumstances tips the balance toward finding that the Affidavit fails to provide a substantial basis to believe that drug distribution proceeds and records reasonably may have been located in the House on November 12, 2020.
Therefore, the Motion must be ALLOWED.
 
ORDER
 
            For the above reasons, it is HEREBY ORDERED that Defendant/Intervenor's Motion To Suppress Evidence Seized With An Invalid/Illegal Search Warrant (Paper No. 8) is ALLOWED and the evidence seized by police pursuant to the search warrant is HEREBY SUPPRESSED.